NAPOLEON HILL COTTON COMPANY, a corporation, Appellant, v. H. OETTER GROCERY COMPANY, a corporation, Respondent.

St. Louis Court of Appeals. Argued and Submitted May 11, 1920. Opinion Filed June 8, 1920.

1. **CORPORATIONS:** Officers: Misapplication of Corporate Funds: Secretary Authorized to Issue Checks Payable to Himslf. In an action by a corporation to recover money paid on its checks issued by its secretary and manager, payable to his order and indorsed to defendant, in payment of his personal debts, evidence *held* to establish the authority of the secretary and manager to issue such checks.

2. **APPELLATE PRACTICE:** Trial to Court: Evidence Admitted Subject to Objection: Problematical Whether Considered: Not Reversible Error. In an action by a corporation to recover money paid on its checks issued by its secretary and manager payable to his order and indorsed to defendant, in payment of his personal debts, where the trial was to the court, a certificate from the plaintiff which had been furnished a bank with which it did business, showing that such secretary and manager had authority to draw such checks against the deposits of the plaintiff in that bank, which certificate when offered in evidence was objected to by plaintiff on grounds stated and was admitted subject to objections, the appellate court cannot say whether the trial court considered it at all in arriving at his conclusion.

3. ———: ———: Finding of Fact Supported by Substantial Evidence Conclusive. Where there is substantial evidence to sustain the findings of the trial court, that finding is conclusive upon the appellate court.

4. **CORPORATIONS:** Officers: Drawing Checks Against Corporate Funds for Personal Use: Knowledge of Corporation: Estoppel. Where plaintiff corporation for a long series of years had permitted its secretary and treasurer to draw his own checks on the funds of the company for the payment of his own indebtedness, and the slightest examination of the books of the concern, its banking accounts, would have shown that this was a fact, and yet it made no effort to check it or stop it until it discovered a large overdraft, the plaintiff is estopped from claiming recourse on the defendant.

5. ———: ———: ———: Acquiescence of Corporation: No Recovery. The rule that checks drawn by an officer on his company for his own private business are invalid is not applicable where an officer was permitted for a series of years to draw his own checks on the funds of the company for the payment of his own indebtedness.

6. **DECISIONS:** Controlling Effect of. Every judgment must be read as applicable to the particular facts proved, or assumed to be proved, since the generality of the expressions which may be found there are not intended to be expositions of the whole law, but governed and qualified by the particular facts of the case in which such expressions are found

7. **CORPORATIONS: OFFICERS:** Drawing Checks Against Corporate Funds for Personal Use: Evidence: Certificate Showing Authority of Officer to Draw Checks Admissible. In an action by a corporation to recover money paid on its checks issued by its secretary and manager payable to his order and indorsed to defendant in payment of his personal debts, a certificate of the corporation, showing authority in such secretary and manager to draw checks, etc, given to another bank, was competent and admissible.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Rhodes E. Cave,* Judge.

AFFIRMED.

*H. R. Boyd, W. M. Fitch* and *Homer Hall* for appellant.

*Bryan, Williams & Cave* for respondent.

(1) Under the decisions of the Missouri courts (prior to Act of April 9, 1917), where a corporation check was

drawn by one of its agents to his own use anyone accepting such a check was presumed to do so with knowledge that such agent was acting beyond his authority and the burden of proof was upon anyone accepting such check to show the agent's authority, if any he had. This was a mere rule of evidence and not of substantive right. McCullom v. Buckingham, 199 S. W. 417; Reynolds v. Whittemore, 190 S. W. 594; Bank v. Edwards, 243 Mo. 553; Bank v. Investment Co., 160 Mo. App. 369; Napoleon Hill Cotton Co. v. Stix, Baer & Fuller, 217 S. W. 223; McCullem v. Mermod, 218 S. W. 345. (2) By the Act of April 9, 1917 (Laws 1917, p. 143), this presumption or rule of evidence was abolished and the burden was placed on the corporation, before it could recover from one accepting such a check, to show that such one had actual knowledge that such check was issued without authority of said corporation. (3) No vested rights can be gained in rules or evidence, and such rules may accordingly be modified at the pleasure of the Legislature and when so modified are applicable to pending actions. 12 Corpus Juris, 982; 8 Cyc. 924; 36 Cyc, 1217-18; 1 Elliott on Evidence, 106; 3 Elliott on Contracts, 999; 8 Elliott on Contracts, 774; 26 Am. & Eng. Enc., 697-98; Coe v. Ritter, 86 Mo. 277; Clark v. Railroad, 219 Mo. 524; Lovell v. Davis, 52 Mo. App. 338; O'Bryan v. Allen, 108 Mo. 227; Gibson v. Railroad, 225 Mo. 473; Howard v. Strode, 242 Mo. 210. (4) That the new rule of evidence created by the Act of April 9, 1917, and effective on June 18, 1917, was controlling upon the trial court in the instant case decided September 10, 1917, requires no authority. (5) The plaintiff offered absolutely no evidence to show, nor is there any claim, that the defendants here had any "actual knowledge" that the checks in question were issued without the authority of the plaintiff, other than the presumption of knowledge which arose under the former decision, but which was abolished by the Act of 1917. And the Act of 1917 applying to this case, there can be no question but that the plaintiff is not entitled to recover. (6) Assuming that

the Act of 1917 is not applicable to the instant case, the testimony certainly disclosed some evidence from which the trial court might have found as a fact (a) that Upshaw had in fact unlimited authority to draw checks on the company's fund to his own order and for his own use; (b) that the company (all the other stockholders besides Upshaw) in fact knew that Upshaw was so drawing checks on the company's funds to his own order in excess of his salary and ratified and approved his so doing. Either of which findings would preclude plaintiff's recovery. And, no declaration of law having been asked or given, if there is any evidence to sustain the judgment of the trial court on any theory, it will not be disturbed on appeal. First National Bank v. Wolz, 193 S. W. 614; Snyder v. Loyal Protective League, 196 S. W. 1022.

REYNOLDS, P. J.—The petition in this case, after averring the incorporation of plaintiff and defendant, for the first cause of action avers that on February 11, 1911, defendant received a check of plaintiff for the sum of $225, drawn in the name of plaintiff on the Boatmen's Bank, to the order of one R. W. Upshaw, by him indorsed in blank and delivered to the defendant, indorsed by the latter to the Mercantile Trust Company of St. Louis, and paid by the Boatmen's Bank on February 13, 1911. Averring that the plaintiff, at the date of the draft or check, was not indebted to R. W. Upshaw in any sum whatever, and that defendant received a check for the money on that date and is indebted to plaintiff in that sum as money had and received by it, judgment is prayed for the amount of that check and interest from February 11, 1911.

The second cause of action is on a check of plaintiff, dated June 28, 1912, drawn by Upshaw and to his order, for the sum of $225, and put through bank and collected by defendant, it being averred that plaintiff was not indebted to the defendant on the date of the check in any sum whatever. Interest is also prayed on this from July 31, 1911.

The third count is on a check in the name of plain tiff, of date December 16, 1912, for $241, payable to R. W. Upshaw and signed by him as secretary and manager of plaintiff. Averring that it was not indebted to R. W. Upshaw in any sum whatever, and that defendant received the money to the use of plaintiff and was indebted to it for that sum, judgment is prayed for that and for interest from February 1, 1912.

The answer, admitting the incorporation of the parties, sets up that plaintiff is a corporation organized under the laws of the State of Missouri, with a capital stock of $250,000, with all of its stock, except 50 shares owned by the heirs of Napoleon Hill and Noland Fontaine; that Hill and Fontaine and their heirs were and are residents of Memphis, Tennessee, residing there, and that the business and office of the plaintiff company was and is in St. Louis, Missouri, and at the time these checks referred to were issued, was under the sole control, management and charge of R. W. Upshaw, who was the owner of 50 shares of stock in the corporation and its secretary and treasurer; that the corporation was organized as a matter of convenience for the parties, but that the corporate forms were seldom observed and the business and assets of the company were treated as if belonging to a partnership, the stockholders drawing from the treasury of the corporation such funds as they might from time to time need for their purposes; that Upshaw, secretary and treasurer of the corporation, was authorized by the stockholders and directors, both generally and specially, and by acquiescence in long custom, to deal with the assets and bank account of the corporation as he saw fit; that in pursuance of such authority, Upshaw was authorized to and did execute notes, checks and other instruments of various kinds and character on behalf of the corporation, and had authority and did issue checks for his own personal use on the bank account of plaintiff; that Upshaw was to receive a salary of $3600 per annum for his services, which he paid himself from time to time by issuing checks for his personal use upon the bank

account of plaintiff; that the stockholders of the plaintiff company knew of this fact, and authorized Upshaw to make payments to himself in this manner; that Upshaw and other stockholders in, the corporation from time to time, for their own purposes, drew upon the treasury of the corporation, and there was carried overdrafts upon the books of the plaintiff charged against various stockholders, which practice was well known to the stockholders of the corporation and approved and authorized by them; that after twenty years the Fontaine and Hill interests in the company became dissatisfied with the management of Upshaw, claiming that he had abused the privileges conferred upon him by the stockholders and the board of directors of the corporation and had overdrawn his account largely in excess of the amount they had expected and in excess of what they believed to be due for his salary and other obligations due from the company or the stockholders thereof to Upshaw; that knowledge came to the Fontaine and Hill interests of the alleged breach of trust on the part of Upshaw in the year 1912, at which time they caused some investigation to be made, and subsequently, in the latter part of 1913 and the early part of 1914, the stockholders of plaintiff company made a further investigation of the books and records of the company and became possessed of all the facts with reference to the dealings of Upshaw with the company and with other stockholders therein, and that with the knowledge that Upshaw had not properly kept his books and had falsified his accounts, the plaintiff company continued Upshaw in their employ, and on June 5, 1915, for the purpose of settling the differences and adjusting all matters between Upshaw and plaintiff company, the stockholders in the company, through their board of directors, accepted 50 shares of stock in plaintiff company, then belonging to Upshaw, in full satisfaction and settlement of the over draft shown on the books of the plaintiff company against Upshaw; that the stock of Upshaw in plaintiff company represented the total assets of Upshaw; that plaintiff and its stock-

holders, Fontaine and Hill, appropriated to themselves all of the assets of Upshaw for the purpose of liquidating the obligations of Upshaw to the company, and in so doing deprived the other creditors of Upshaw of the benefit of his assets; that at the time of this appropriation plaintiff company had actual knowledge of all the facts with reference to Upshaw's alleged defalcations, and that he had issued the checks to defendant described in plaintiff's petition; that these checks were issued by Upshaw in payment of his personal obligations for groceries furnished him by defendant for family use, and that defendant believes and has reason to believe that these checks were a part of the thirty-six-hundred-dollar salary of Upshaw, and that the primary liability to defendant on account of the issuance of these checks, if they were in excess of the salary, is that of Upshaw, and if Upshaw had exceeded the amount due him from plaintiff, then defendant was entitled to participate in the assets of Upshaw, represented by the 50 shares of stock which plaintiff and its stockholders appropriated for their own purposes, and which said stockholders now hold as beneficiaries thereof; that defendant had no knowledge of the alleged defalcation of Upshaw until December 9, 1915, at which time plaintiff notified it, making a demand upon defendant for the payment of the money received under the three checks; that had defendant been informed of the situation promptly and at the time the knowledge of it first reached Fontaine and Hill and plaintiff company, that Upshaw was then alive and defendant could have participated in his assets, which were appropriated by plaintiff and its stockholders, and could have protected itself by recourse against Upshaw; and that since the institution of this action Upshaw has died, and by reason of plaintiff company failing to notify defendant of the alleged defalcations of Upshaw and its claim against Upshaw as soon as plaintiff had knowledge of the same, defendant is precluded and has been precluded from protecting itself against

204 M. A.—28

Upshaw; that in equity and good conscience plaintiff herein and its chief stockholders, Fontaine and Hill, should not be permitted to create a condition whereby Upshaw, as their agent and representative, could for a long period of time issue checks upon plaintiff's account under direct authority and permission and with the consent and knowledge of plaintiff and its stockholders, which checks were received current in the city of St. Louis for the payment of the personal obligations of Upshaw, and upon Upshaw proving false to his trust be allowed to appropriate for their own use and benefit the only assets which Upshaw possessed, without promptly notifying defendant and other creditors of Upshaw of his defalcations as soon as they became possessed of the knowledge, and thereby enable this defendant to pursue its recourse against Upshaw; that plaintiff and its stockholders by their conduct in dealing with this defendant, and with the assets of Upshaw, are in equity and good conscience estopped from asserting any rights against defendant on account of the checks described in plaintiff's petition; that although as set out in plaintiff's petition, the checks were paid at or about the time of their issue, no objection was made to the issuance and delivery of the checks until on or about December 9, 1915; that the defendant company, its officers, directors and stockholders knew, or by the exercise of ordinary care could have known, of the issuance of these checks and of the practice of Upshaw of issuing the company's checks in payment of his personal obligations long prior to December 9, 1915. By reason of all of which facts defendant alleges that plaintiff company is guilty of laches and estopped to assert that Upshaw, as secretary and treasurer and general manager of plaintiff company had no authority to issue and deliver these checks in payment of his obligations due this defendant, wherefore defendant prays judgment against plaintiff.

The cause was tried by the court, a jury being waived, and submitted to the court May 7, 1917. On September 10, 1917, the court made its finding and verdict and

rendered judgment thereon in favor of defendant and against plaintiff. Motions for new trial were duly filed, overruled, exceptions saved and plaintiff appealed.

Plaintiff introduced, the three checks in evidence, which are as before set out. It was in evidence that Upshaw drew a salary of $300 a month, as secretary and treasurer; that he was the only officer of defendant company in St. Louis who at the time had authority to sign checks when these checks were issued, and it was admitted that defendant had received payment for them.

One Robert H. Jones, secretary and treasurer of plaintiff, testified that he had been such for about two years prior to the trial and had been cashier of the company from May 15, 1914, but Upshaw had preceded him as secretary and treasurer of the company; that he (witness) lived in Memphis, Tennessee, before he came to St. Louis as cashier of plaintiff; that the principal owners of the Napoleon Hill Cotton Company were Napoleon Hill and Noland Fontaine. That Upshaw held a certificate of stock representing $5000. Except that held by Hill, Fontaine and Upshaw, a few shares were held by others to qualify them as directors, these holding one share each; that Hill died in 1909, and Fontaine about 2 years afterwards, and their stock is now held in trust by the estates of their respective families.

Without going into the evidence in detail, it is sufficient to say that that on the part of defendant tended to establish the material facts relied on by defendant in support of the authority of Upshaw to issue these checks. We have set out the answer in some detail, for it presents the issues as relied upon by defendant and on which the trial court undoubtedly acted.

Plaintiff is a Missouri corporation, having its domicile in the city of St. Louis. All of its stockholders and officers, except Upshaw, at the time of the transactions here involved, resided in Memphis, Tennessee, although its corporate meetings of its directors as well as of its stockholders were held in St. Louis at stated periods. Upshaw had entire control of its business in St. Louis.

Napoleon Hill and Noland Fontaine died and on their death new directors were elected in their places in October, 1912, and at a meeting of the board held that year Upshaw was re-elected secretary and treasurer. On October 18, 1912, the board of directors instructed the president to engage a firm of auditors to audit the books. R. W. Upshaw continued to be elected secretary and treasurer, his salary fixed at $300 a month, and at a meeting on May 13, 1914, a cashier was elected or appointed, to him being committed the sole custody of all the assets of the company, he to countersign with the president, vice-president or secretary and treasurer all contracts, checks and notes issued by the company. It was in evidence that Upshaw had made overdrafts—at what time does not distinctly appear—some of which he charged to account and some of which were carried as "interest." A son of Napoleon Hill, who succeeded his father as president and in the company, testified that his father knew of Upshaw's overdrafts two or three years before he died. It seems there was some settlement made with Upshaw in June, 1915. He had taken some land in Arkansas in his own name, which he had paid for out of funds of the company, and this he turned over. The overdrafts of Upshaw were figured at some $7000, and charging that off to profit and loss, the company demanded of Upshaw that he turn over to it 50 shares of stock which he owned in the company. This he did in settlement of his then known overdrafts. Thereafter he made none. Upshaw had drawn his salary up to September 1, 1915, but at that time not an active share in the management of the business of the company, it being agreed that he would assist the auditor in tracing down the title to some real estate. He was discharged September 1, 1915. He was not re-elected secretary and treasurer at the June, 1915, meeting, his successor being elected. The checks sued on, it was in evidence, were charged on the books of the company to Upshaw or to "interest account" or "expense account." The man selected to audit completed his work, bringing it down to

the time when Upshaw drew checks as secretary and treasurer, some time in September, 1915, and about December 9, 1915, defendants demanded payment of these checks. Upshaw had not signed any checks after May, 1914, as secretary and treasurer alone; after that date they had to be countersigned by the cashier. Upshaw, during his occupancy of the office of secretary and treas- urer, paid his own salary either by taking money from the cash drawer or writing a check. He had been secre- tary and treasurer from the time the company organized in St. Louis, in 1878, down to 1915.

There was introduced in evidence a by-law of the company as follows:

"VII. In the absence from sickness, death or inabili- ty of the president to act, his duties shall be performed by the vice-president. But in the absence of both presi- dent and vice-president, the business shall be transacted and under the control of the secretary and treasurer and he shall be empowered to sign all documents the same as if the president was present. He shall keep a faithful record of all business transacted at the meetings of the board of directors, countersign all certificates of stock, checks, deeds and formal written contracts, and perform such other duties as the board of directors may pre- scribe or as the president may from time to time requir; of him."

There was also introduced in evidence a certificate from the plaintiff, which had been furnished to the Franklin Bank, with which it did business, but there was testimony that Upshaw "was the only man who had au- thority deposited in the banks to draw checks." In this certificate the substance of the by-law above quoted is set out and then follows the certificate from the presi- dent, F. W. Hill, and R. W. Upshaw, as secretary, of date June 9, 1913, in which it is set out "that R. W. Up- shaw is the treasurer of said company (having been elected by board lastly on October 17, 1912) and, as such, is authorized to receive and give receipts for all money due and payable to said company, to draw checks against

the deposits of the company, to his own order or to bearer, as well as to the order of third persons, to sign and indorse notes for the company, as shown by the above extract from its books, and that such authority remains unrevoked and unchanged at this date, and shall continue in force until written notice of the discontinuance thereof shall have been received and acknowledged by the Franklin Bank of St. Louis.''

This was signed, as stated, by the president and by Upshaw as secretary and treasurer, with the seal of the bank attached.

When this certificate was offered by defendant it was objected to by counsel for plaintiff as incompetent and immaterial and as constituting no defense to the cause of action because it was given to the Franklin Bank and not to the defendant, and there is no evidence before the court that the defendant had any knowledge of the existence of such paper or relied in any way upon the same in accepting the checks of Upshaw. The court held it admissible against the company ''as showing this was in the record.'' Whereupon counsel for plaintiff made the further objection that the minutes of the company would be the best evidence as to the authority of Upshaw, that any statement or interpretation of the meaning of the minutes or by-laws of the company should not be binding on the plaintiff and would not constitute any defense to the cause of action, and that it does not purport to give Upshaw the right or authority to issue checks on the funds of the plaintiff for the purpose of paying his own indebtedness to defendant or any one else. These objections were the only ones to this certificate and the trial court admitted it ''subject to objection.'' It is to be remembered that the trial here was to the court and we cannot say whether he considered it at all in arriving at his conclusion. It will be noted that the by-law, which was abbreviated in this certificate, was introduced in evidence.

It was in evidence that during the time of the issuance of the checks in controversy neither the president,

nor vice-president of the company was present at St. Louis. That Upshaw had overdrawn his account was certainly known a year before the death of Napoleon Hill in 1909, possibly two or three years before that; in brief, there was substantial evidence in support of the averments of facts in the defendant's answer to sustain the action of the trial court in finding for defendant on these checks, to the effect that the course of business of plaintiff with Upshaw, and of Upshaw with them, was of such a character and so long continued as to estop the plaintiff from claiming recourse on the defendant. That finding is conclusive on us.

It appears in evidence that for a long series of years running back to the beginning of business by this corporation in St. Louis, Upshaw, as its secretary and treasurer, had been drawing his own checks on the funds of the company for the payment of his own indebtedness It does not seem reasonable that he could have done this without the knowledge of the corporation. It would seem that the slightest examination of the books of the concern, its banking accounts, would have shown that this was a fact, and yet plaintiff company made no effort to check it or stop it until in 1915, when it discovered the large overdraft. Under these circumstances it does not seem equitable that plaintiff should now be permitted to recover from the defendant, which, as far as the evidenc· shows in the case, was entirely innocent of any lack of authority on the part of Upshaw to so use the checks of the plaintiff company. The president of defendant company testified that he had known Upshaw for 16 or 17 years; had furnished him groceries during that time and that during some of the time he paid in checks, at other times in cash, the checks similar to those sued on and signed in the same way. "That," said the witness, "ran on probably for ten or fourteen years." He further testified that at the time Upshaw died, he left no estate.

We are aware that there are a number of cases, many cited by learned counsel for appellant, in which it is held that checks, drawn by an officer on his company for

his own private business, were invalid or, as held in St. Charles Savings Bank v. Edwards, 243 Mo. 553, l. c. 567, 147 S. W. 978, voidable. We do not think that the facts in any of these cases are precisely parallel to the facts in the case at bar. As said by our Supreme Court in State ex rel. Bixby et al. v. St. Louis, 241 Mo. 231, l. c. 238, 145 S. W. 861, "It would be a wide and very mischievous departure from correct canons of interpretation to disconnect general language from the issues and facts of a given case and to apply that general language mechanically or automatically to the different facts and different issues of another case; for the sense must be limited according as the subject requires, and words take color from their context. In the House of Lords in Quinn v. Leathem (Appeal Cases 1901, l. c. 506), the Earl of Halsbury, Lord Chancellor, said: 'Now, before discussing the case of Allen v. Flood and what was decided therein, there are two observations of a general character which I wish to make, and one is to repeat what I have very often said before, that every judgment must be read as applicable to the particular facts proved, or assumed to be proved, since the generality of the expressions which may be found there are not intended to be expositions of the whole law, but governed and qualified by the particular facts of the case in which such expressions are found. The other is that the case is only authority for what it actually decides. I entirely deny that it can be quoted for a proposition which may seem to follow logically from it.'" Judge LAMM follows this with quotation from Vattel and other accepted authorities to the same effect. This rule was approved by our Supreme Court in Koerner v. St. Louis Car Co., 209 Mo. 141, l. c. 156, 107 S. W. 481, and in Bender v. Weber, 250 Mo. 551, l. c. 561, 157 S. W. 570.

In apparently departing from some of the cases cited we have applied to the case at bar the rule so forcibly stated and buttressed by authority in the above cited cases.

Learned counsel complain of error in admitting evidence of overdrafts of various persons other than Upshaw, which had been made, and in admitting in evidence a paper called "Certificate of the Corporation," showing authority of Upshaw to draw checks, etc., the certificate given to another bank, and of error in admitting list of suits brought by plaintiff. Except the certificate referred to these were all admitted "subject to objection" by the court. We cannot possibly say what weight he gave to them. At any rate, their admission was not reversible error. As to the admission of the certificate referred to, we think its admission was competent. It tended to show the authority which the corporation had vested in Upshaw.

Some point is made by counsel for respondent as to the effect on this action of the Act of April 9, 1917, effective June 18, 1917, it being argued that no vested rights can be gained in rules of evidence and that such rules may accordingly be modified at the pleasure of the Legislature, and when so modified are applicable to pending actions. Counsel for appellant attack that act both as not here applicable and as unconstitutional. In the view we take of the case on the facts in evidence and as found by the trial court, it is not necessary here to consider these propositions and we do not determine them.

The judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.*, concur.