A. B. DARELIUS, AS RECEIVER, ETC. v. COMMONWEALTH MORTGAGE COMPANY (SUBSTITUTED FOR J. A. MANS-FIELD), APPELLANT.[1]

May 12, 1922.

No. 22,589.

**Corporation — rescission of fraudulent agreement instigated by controlling stockholder.**

1. The evidence sustains the finding of the trial court that the issuance of certain notes by plaintiff corporation and the transfer of certain property by plaintiff corporation to defendant corporation in payment of the notes were transactions done at the instance of a controlling stockholder in both corporations, without consideration, without authority of plaintiff corporation, and in fraud of that corporation; that defendant corporation was chargeable with knowledge of the facts and that plaintiff corporation is entitled to have the transactions set aside.

[1]Reported in 188 N. W. 208.

**Return of worthless consideration — tender before suit.**

    2. Plaintiff may have rescission without return of consideration received which is wholly worthless. If any part of the consideration is of value its return may still be required. Tender before suit was unnecessary.

**No estoppel.**

    3. There is no element of estoppel in the case. There is no estoppel as to facts equally known to both parties.

**Depreciation of assets.**

    4. Depreciation of assets to be restored does not necessarily bar rescission in the absence of laches.

Action in the district court for Hennepin county for restitution of certain real and personal property and to recover $10,000. The case was tried before Fish, J., who when plaintiff rested denied defendant's motion to dismiss the action, made findings and ordered judgment in favor of plaintiff for the recovery of the property. From an order, Leary, J., denying its motion for amended findings and conclusions or for a new trial, defendant appealed. Affirmed.

*Selover, Schultz & Mansfield,* for appellant.

*John N. Berg,* for respondent.

HALLAM, J.

Plaintiff brought this action to recover certain real and personal property transferred by officers of the Mortgage Security Company to the Commonwealth Mortgage Company. Plaintiff charges that the transfers were made at the instance of W. H. Schafer and for his personal benefit without consideration moving to the Mortgage Security Company, without authority of that corporation, and in fraud of the corporation. The trial court found for the plaintiff on all of these issues and ordered judgment that the property be recovered. Defendant appeals from an order denying a motion for a new trial.

    1. The decision is sustained by the evidence. There is evidence of the following facts:

The Mortgage Security Company is a corporation organized to buy, sell and improve real estate and to buy, sell and hold stocks, bonds, commercial paper and other choses in action. Prior to August 10, 1918, W. H. Shafer secured a controlling interest, that is, a majority of the voting power of the capital stock.

The Commonwealth Mortgage Company is a corporation organized to buy and sell mortgages and other securities. Prior to August 10, 1918, Shafer secured a similar controlling interest in this corporation. This controlling interest consisted of 8,100 shares of common stock of the par value of $810,000. It was acquired from two men, Loveland and Ludlow, the former then president of the company, for a consideration of about $300,000, and Schafer gave his notes for this amount and gave the stock as security for their payment. The notes and collateral came into the hands of the Commonwealth Company.

On August 10 Schafer ostensibly sold 5,790 shares of this stock to the Mortgage Security Company for $175,000, taking seven notes of the Mortgage Security Company of $25,000 each, payable to bearer for the amount. Loveland was still president of the Commonwealth Mortgage Company, though Schafer had acquired his stock. His resignation as president took effect five days later. It had been handed in a few days before it took effect. Schafer said Loveland had resigned before August 10, or at least his resignation was in at that time. Schafer and Loveland together took the 5,790 shares of stock to the Mortgage Security Company and there delivered them to the president of the Mortgage Security Company, and Loveland received the $175,000 in notes of the Mortgage Security Company. A corresponding amount of Schafer's notes held by the Commonwealth Mortgage Company was surrendered. Save as here stated the Mortgage Security Company received no consideration for the issuance of its notes.

At this time Harry C. Kemp was president of the Mortgage Security Company. He had been elected after Schafer secured control and he was the nominal holder of Schafer's stock. Schafer, though not an officer, was directing the affairs of the company. He told Kemp what to do and he did it. He told Kemp to sign the seven notes

and he signed them. No other officer of the Mortgage Security Company was consulted. And as far as the Commonwealth Mortgage Company was concerned the transaction was at the request of Schafer.

Thereafter and prior to October 17, 1918, Kemp as president and A. K. Hofer as assistant secretary of the Mortgage Security Company, conveyed to the Commonwealth Mortgage Company by numerous deeds a large number of pieces of real estate and transferred certain shares of stock, it is claimed, in payment of its notes above mentioned. These transfers the trial court in effect set aside.

These facts stand out:

The Mortgage Security Company received nothing of value for the issuance of its $175,000 in notes. It received 5,790 shares of the common stock of the Commonwealth Mortgage Company. But the evidence is undisputed that this stock had no value. There was preferred stock to the amount of $1,000,000 and the assets of the Commonwealth Mortgage Company were worth less than that amount. There was some evidence that the control of the Commonwealth Mortgage Company was worth $300,000, that is, the "opportunity of handling the money and the funds of the company" was considered worth that amount. Two observations are pertinent here: First, even though this testimony was undisputed the court could not justly find that the opportunity of handling these assets, honestly, was worth anything like $300,000. The stockholders of the company were entitled to the return which the assets might yield, a fact which Mr. Schafer apparently overlooked. The prestige of ownership of the control of a financial institution of badly impaired capital stock may be of some account, but only unfaithful management could yield returns on any such amount as that fixed by this testimony, as the value of the control.

Second, the stock transferred to the Mortgage Security Company in fact fell far short of the amount necessary to give control, and any amount less than that, as above stated, had no value.

As to the transfer of the real estate and other assets, the Mortgage Security Company received no consideration except a charge on its books to Schafer's account and perhaps a note given by Schaf-

er. Both were worthless. Schafer was insolvent. He had at that time some credit, but very soon thereafter went into bankruptcy with no assets of consequence and large liabilities, how large does not appear, except that there was one claim of $200,000.

There is no evidence of any negotiation between the parties as to these transfers. There is no evidence that any price was fixed. The nearest approach to negotiation is found in the following testimony of Schafer. After stating that he did not discuss these transactions with any of the officers or directors of the Mortgage Security Company save as he told Kemp what to do, he said, referring to Kemp: "I think I told him  *  *  *  that it was my plan to have the Mortgage Security Company buy half of the stock, the control of the Commonwealth Company, and that later we would make some deal to trade him the real estate that was carried on the books of the Mortgage Security Company for the notes. Some such conversation took place." In fact it is hard to find anywhere in any part of these transactions any evidence of real adversary negotiation. Schafer was the only real actor. He testified that he controlled both companies, and that the transaction on both sides was at his request or direction.

Defendant's counsel argue earnestly that Schafer actually paid the Mortgage Security Company approximately $50,000 on account of this real estate by a charge to Schafer's account on the books of the Mortgage Security Company. The bookkeeping transaction was somewhat bewildering and need not be detailed here except to say the fact most relied on is that at the time the real estate transaction was closed Schafer had a credit on the books of the Mortgage Security Company of $48,346.73. There was then charged to Schafer's account $50,704. Who authorized the charge does not appear. The charge was apparently partly involved in a process of charging off value of assets which the auditor claimed to be inflated or worthless, and was done partly to balance the books when this property disappeared from the assets. There is no evidence that it was made pursuant to any agreement between Schafer and the company. Still defendant contends that the credit to Schafer on the books entitled him to receive the amount thereof from the company, and that the

charge against his account in off-set of this credit was equivalent to the payment to the company of the amount of the credit.

As to the ordinary book account this reasoning would be sound. Hare v. Bailey, 73 Minn. 409, 76 N. W. 213; Pope v. Ramsey County State Bank, 137 Minn. 46, 162 N. W. 1051, but when we consider the nature of the Schafer account we think the position proves untenable. Schafer's method was to gather together notes and perhaps other paper, and then discount them in banks which he controlled. He used the company as the medium. As notes were brought in they were credited to Schafer's account, and as the money came in from the banks in payment therefor it was turned over to Schafer and the amount charged to his account. The company received no benefit from the transactions; the account was a transit account and the money was a mere conduit for transmission of the notes and the return of their proceeds. The bookkeeper testified that notwithstanding the charge to Schafer's account he was entitled to receive and did receive all the returns on these notes in transit. There is no evidence that Schafer in fact received any less or that the company received anything by reason of this charge. In fact Schafer later gave a note for $45,855.60, and this fact in connection with a debit balance of $3,496.03 when the account was closed confirms the testimony of the bookkeeper that Schafer in fact gave up nothing. The system of bookkeeping was an odd one as was the whole method of doing business, but we find in the evidence of the books no assurance that the company in fact benefited through this transaction. This is in harmony with the view taken of this account in 145 Minn. 21, 175 N. W. 993.

The whole transaction was easily voidable. The transaction in August was simply a case of a controlling stockholder in a corporation directing a puppet president of the corporation to issue for his personal use the corporation's notes for $175,000 without any real consideration and without consultation with other officers, directors or stockholders. It requires neither argument nor citation of authority to demonstrate that the president had neither express, nor implied, nor apparent, authority to issue the notes of the corporation for any such purpose or on any such consideration. Such transac-

tions have always been condemned. First Nat. Bank of Rice Lake
v. Flour City Trunk Co. 118 Minn. 151, 136 N. W. 563; Gross Iron
Ore Co. v. Paulle, 132 Minn. 160, 165, 156 N. W. 268; Luden v. En-
terprise Lumber Co. 146 Ga. 284, 91 S. E. 102, L. R. A. 1917C, 485.

It seems equally clear that no one not a bona fide purchaser with-
out notice would be in any better position than Schafer. Nicholson
v. Nat. Mnfg. & Supply Co. 132 Minn. 102, 155 N. W. 1070. The
Commonwealth Company was not a purchaser without notice. Its
president, Loveland, was fully charged with notice of the lack of
consideration for the notes. Schafer of course had full knowledge
of the facts, and, though personally interested, to the extent that
he was the sole representative of the corporation, his knowledge
was the knowledge of the corporation. State Bank of Morton v.
Adams, 142 Minn. 63, 170 N. W. 925. Nor did Kemp and the as-
sistant secretary of the Mortgage Security Company have any au-
thority express, implied or apparent, to convey the property of the
corporation in payment of these unenforceable notes.

2. Defendant urges that plaintiff cannot recover the property
transferred without a rescission of the transactions, and urges that
the Mortgage Security Company could have no rescission without
restoring to the other parties what they had parted with and plac-
ing them in statu quo. It is contended that plaintiff cannot undo
the transaction without restoring to the Commonwealth Company
its 5,790 shares of stock, and also the Mortgage Security Company
notes of $175,000, and also the notes it surrendered to Schafer and
certain stock delivered by it to him and also the amount charged to
Schafer's account. On the other hand, plaintiff contends that this
action does not involve rescission at all:

This feature of the case does not seem to us to present any real
trouble. It is proper however to say that, in our opinion, to the
extent that this action asks for a recovery of the property conveyed
it involves rescission. It is stated as a general rule that a court will
not grant rescission without placing the parties in the situation they
were in when the transaction was done. 9 C. J. 1209; Eastman v.
St. Anthony Falls Water Power Co. 24 Minn. 437. But this rule
is not invariable. It is founded on the principle that "he who seeks

equity must do equity," and, whenever under the circumstances of the particular case restitution by plaintiff is not essential to the complete administration of justice between the parties, it will not be required. The rule goes no farther than justice requires. McCarty v. N. Y. Life Ins. Co. 74 Minn. 530, 537, 77 N. W. 426; Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476; Hall v. Bank of Baldwin, 143 Wis. 303, 309, 127 N. W. 969; Pidcock v. Swift, 51 N. J. Eq. 405, 27 Atl. 470; Swift v. Pidcock, 53 N. J. Eq. 238, 34 Atl. 1135; More v. More, 133 Cal. 489, 65 Pac. 1044, 66 Pac. 76; Hale v. Kiobbert, 109 Iowa, 128, 80 N. W. 308. It is not necessary to return property received which is utterly worthless. 9 C. J. 1211; Dille v. White, 132 Iowa, 327, 109 N. W. 909, 10 L. R. A. (N. S.) 510; Pacific Bridge Co. v. Riverside Rock Co. 70 Ore. 337, 141 Pac. 751. Nor is it generally necessary to return property which the defendant in rescission has delivered over to third parties not under the control of the plaintiff. Taylor v. Swafford, 122 Tenn. 303, 123 S. W. 350, 25 L. R. A. (N. S.) 442; DeBow v. Wollenberg, 52 Ore. 404, 96 Pac. 536, 97 Pac. 717.

It is easy to apply these principles to the facts in this case. The 5,790 shares of stock of the Commonwealth Company never possessed any real value. The Commonwealth Company later passed into the hands of a receiver, and it may be assumed that its common stock is now utterly worthless. If not it may still be returned, for it was not necessary that tender of return be made before suit. Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533; I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728. Plaintiff should not be required to return the notes surrendered by the Commonwealth Company to Shafer. They were surrendered to one not under plaintiff's control and they too are utterly worthless. Clearly the Mortgage Security Company should not be required to return and reinstate its own unenforceable notes. And, in view of the nature of the transaction as above discussed, we find no justification in saying that it should be compelled to pay to the Commonwealth Mortgage Company the amount of Schafer's account.

3. Defendant contends that plaintiff is estopped from avoiding the purchase of the Commonwealth Company's stock and the giving

of its notes and avoiding its transfers. Defendant urges that, though Schafer was insolvent at the time of these transactions, still he was a "going concern" with considerable property at times in his hands subject to attachment and that, if the Commonwealth Company had been possessed of Schafer's notes and had not given them up in exchange for the notes of the Mortgage Security Company, it would have been able to collect from him, and that if this transaction is now rescinded it will suffer great loss. In view of the insolvency of Schafer and his methods of business, it seems unlikely that any creditor could have collected any considerable amount from him unless by a process of "robbing Peter to pay Paul," and in view of our laws against preferences it is doubtful whether any collection made could have been retained. But however that may be, we find no estoppel in the case. One of the elements of an estoppel is that the party complaining has been misled by the words or conduct of the other. There can be no estoppel as to facts equally known to both parties. Plummer v. Mold, 22 Minn. 15. We have indicated above that the Commonwealth Company was chargeable with notice of the facts as they existed. That company cannot therefore invoke an estoppel. See Chadbourn v. Williams, 45 Minn. 294, 47 N. W. 812.

4. The changes in Schafer's financial situation are not fatal to the right of the Mortgage Security Company to rescind. On rescission of this transaction the Commonwealth Company doubtless has its remedy against Schafer to recover the amount of his indebtedness to it whether Schafer's notes are returned or not. Granting that this remedy against Schafer is of no value now and that it was of some value at the time of these transactions, the shrinkage in value of an asset to be restored is not fatal to a rescission. It may be a fact to be taken into account particularly in connection with a claim of laches, but it is not necessarily a bar to rescission. Hale v. Kobbert, supra; Barron v. Myers, 146 Mich. 510, 109 N. W. 862; Neblett v. Macfarland, 92 U. S. 101, 23 L. ed. 471; Felt v. Bell, 205 Ill. 213, 68 N. E. 794.

Order affirmed.