## LAKE PARK DEVELOPMENT COMPANY v. PAUL STEENBERG CONSTRUCTION COMPANY.[1]

December 17, 1937.

No. 31,233.

*Guy W. Kimball* and *Charles S. Kidder,* for appellant.
*Samuel Lipschultz,* for respondent.

PETERSON, JUSTICE.

Plaintiff recovered judgment against defendant setting aside a deed of certain real estate and an assignment of a certain mortgage, upon the grounds that the transfers were wholly without consideration and unauthorized by plaintiff's board of directors, and for the net income received by defendant from the property and the

[1]Reported in 276 N. W. 651.

mortgage, as an accounting. J. Norman Storr, vice-president and treasurer of plaintiff, being in default on a contract for deed executed in 1928, by which defendant agreed to convey to Storr the property known as the Colonnade Annex at the southeast corner of Tenth and St. Peter streets in St. Paul, and being indebted to defendant for $950, for which he pledged the contract for deed, to prevent cancellation of the contract for deed and to secure an extension and modification of the same, on July 15, 1932, gave the deed and assignment of the mortgage to defendant, which defendant took at a valuation of $5,500, part of which was applied in payment of Storr's $950 note and the balance on the contract for deed. The extension agreement was between Storr and defendant, and the consideration was paid by transfers of plaintiff's property. The court below made findings of fact and conclusions of law that the deed and assignment of mortgage were a transfer of plaintiff corporation's property to pay the personal debt of the officer Storr, without any consideration moving to plaintiff, that they were entirely unauthorized and had not been ratified or acquiesced in, and ordered judgment for plaintiff. Defendant appeals from the judgment.

■ Recovery is predicated upon the ground that plaintiff's officer Storr wrongfully appropriated corporate property to the payment of his individual obligations. If this were the only question presented plaintiff would be entitled to prevail. An officer of a corporation does not have authority to use corporate property to pay his personal obligations unless all the stockholders consent, and an action will lie by the corporation to recover property from one by whom it is so received. The gist of the right of recovery is the unauthorized appropriation of corporate assets to noncorporate purposes. 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1937) § 2116; Gross Iron Ore Co. v. Paulle, 143 Minn. 48, 172 N. W. 907; Darelius v. Commonwealth Mortgage Co. 152 Minn. 128, 188 N. W. 208.

■ Defendant urges that plaintiff and its stockholders are bound by their consent and acquiescence. The findings below are sustained insofar as it is found that neither plaintiff's directors nor stockholders formally authorized Storr to transfer plaintiff's property for his personal benefit. But "a broader and more sinister situa-

tion" than the facts specifically found below, to observe the distinction in a similar case, Anderson v. Missouri State L. Ins. Co. (C. C. A.) 69 F. (2d) 794, 797, is shown by undisputed evidence that Storr exercised plaintiff's corporate powers and used its assets at will for his individual benefit, without restriction or limit, with the consent and acquiescence of plaintiff's directors and stockholders.

Storr dominated and controlled plaintiff's corporate activities. Plaintiff is a "family" corporation, incorporated on December 26, 1929, in which all of the 500 shares of stock, except one, are owned by members of the Storr family. The corporate arrangement was favorable, if not conducive, to Storr's domination and control. The one share is held by the secretary to qualify him as such. Mrs. Storr owned 498 shares from December 31, 1929, to July 1, 1930, when she transferred 497 shares to their son, John K. Storr, and J. Norman Storr has at all times owned only one share. At the first directors' meeting, on December 26, 1929, at which the owners of all stock then outstanding were present, by-laws were adopted which, among other things, authorized the president, or in his absence or inability to act, the vice-president, to execute in the name of the corporation, deeds, leases, contracts, and other instruments and affix thereto the corporate seal. The by-laws further provided that all checks were to be signed and indorsed by the president or treasurer.

Only five directors' meetings were held, one on December 26, 1929, in connection with the organization and election of officers, one on December 31, 1929, to accept a transfer of certain property from Mrs. Storr, one on September 30, 1933, to adopt a resolution to renew a mortgage on certain property in its name and to grant an easement, one on May 24, 1934, to call a stockholders' meeting on May 26, 1934, and another on May 26, 1934, to accept the resignation of one George as secretary and to elect one Ingram as secretary in his place. Only one stockholders' meeting was held, and that was on May 26, 1934, to repudiate the transfer of plaintiff's property to defendant. Except as stated, no business was transacted by the directors or stockholders. The corporate machinery was not used by those who owned the corporation. The stockholders and

directors exercised no control or supervision over plaintiff and its officers and did not participate in the corporate activities. The corporation functioned only at the will and pleasure of Storr. Whatever business was transacted was transacted by Storr. The corporation declared no dividends.

What purported to be expressions of plaintiff's corporate will were but Storr's personal acts. He kept the corporate books in his office, exercised general control over plaintiff's operations, managed its business, banked its moneys, signed its checks, and withdrew money from the bank at his pleasure on his signature. With the secretary, he signed deeds, mortgages, and other instruments in plaintiff's name. He controlled all financial operations. He made the entries in the stock book, hired and discharged employes at will, and when the secretary George resigned, Storr's employe Ingram was made secretary.

Storr used plaintiff to transact his individual business. He placed plaintiff in charge of his property and in its name collected rents, brought and settled lawsuits, assigned and satisfied judgments, held and collected fire insurance. Fire insurance on the Colonnade Annex, amounting to $31,500 in Storr's name as purchaser under deed, was indorsed to plaintiff. When a fire occurred, $14,000 for damage to the building and $785 for loss of rents was collected by Storr in plaintiff's name upon proofs of loss in which he falsely swore that, except for the mortgage, no person or persons other than plaintiff had any right, title, claim, or encumbrance thereon. The insurance money was placed in plaintiff's bank account. He expended in plaintiff's name out of the insurance moneys in excess of $10,000 for repairs to the building and decorating and withdrew the balance of over $4,000, which he pocketed.

He controlled plaintiff's affairs so that only he received benefits. Although plaintiff has an authorized capital of only $50,000, which was paid by a transfer to it of some real estate of Mrs. Storr, Storr without express authorization withdrew, between 1930 and 1934, for his personal use, about $18,000, and invested another $4,000 in another corporation which he controlled. No withdrawals were made by any other officers and stockholders, nor were any dividends paid

to them. They received nothing. Storr took all the benefits. Although the by-laws allowed him only a commission on sales as compensation, he disregarded the by-law. Storr took not what the by-law allowed, but what he himself determined to take. He also shifted assets of plaintiff and other corporations which he and Mrs. Storr controlled from one to the other, amounting to from $40,000 to $50,000 per year. He exercised control and dominion over the corporate property as if it belonged to him individually.

Plaintiff's stockholders consented and acquiesced in Storr's domination, control, and management of plaintiff. All his acts were open and without concealment. That J. Norman Storr, Mrs. Storr, and the secretary were bound as officers and stockholders seems clear. Barrett v. Smith, 183 Minn. 431, 237 N. W. 15. Mrs. Storr testified several times that she authorized him to act, that "from the inception of the corporation" her husband had authority to transact and take care of her business "in plaintiff," and that they conferred about such matters. She said that she left the corporate business almost entirely to him. Plaintiff claims that John K. Storr did not consent, but he testified that his father "exercised control generally of the operations" of plaintiff, ever since it was incorporated. While he was the record holder of 497 out of 500 shares, in speaking of his employment by plaintiff he testified that he was working for his father in one of his father's corporations. He attended the only stockholders' meeting, but he signed the minutes of the meeting as his father directed. He received no dividends, asserted no rights, did not question his father's acts. He indorsed his stock in blank, and Mrs. Storr kept the certificate in her safety deposit box. He worked at a desk alongside of his father's desk in his office for over six months after June 1, 1932, and, while he knew about plaintiff's ownership of the property transferred to defendant, he denied knowledge of the transfers. John K. Storr knew of his father's domination and control and himself submitted to it.

Ordinarily, the rule stated that an officer of a corporation does not have the power to use corporate property for his own personal benefit or do other *ultra vires* acts obtains. Where such acts are done with the consent of the directors, the stockholders may com-

plain. Stockholders of a corporation may by their unanimous consent, either by direct act or acquiescence, invest officers of the corporation with general corporate powers involving *ultra vires* acts and appropriation of corporate assets to noncorporate purposes, where, as here, rights of creditors and violations of law are not involved, so that all acts done within the scope of such powers are the acts of the corporation, binding upon it and the stockholders. Barrett v. Smith, 183 Minn. 431, 237 N. W. 15; Gross Iron Ore Co. v. Paulle, 132 Minn. 160, 156 N. W. 268; Stony Brook Lbr. Co. v. Blackman, 286 Pa. 305, 133 A. 556; Jorndt v. Reuter Hub & Spoke Co. 112 Mo. App. 341, 87 S. W. 29; Napoleon Hill Cotton Co. v. H. Oetter Grocery Co. 204 Mo. App. 427, 222 S. W. 876; Hill Syrup Co. v. Frederick & Nelson, 133 Wash. 155, 233 P. 663; Sweet v. Lang (D. C.) 14 F. (2d) 758, affirmed (C. C. A.) 14 F. (2d) 762; Little v. Garabrant, 90 Hun (N. Y.) 404, 35 N. Y. S. 689, affirmed, 153 N. Y. 661, 48 N. E. 1105; Reif v. Equitable L. Assur. Soc. 268 N. Y. 269, 197 N. E. 278, 100 A. L. R. 55; Ferdinand Ehrlich, Inc. v. Levine, 83 Misc. 136, 144 N. Y. S. 818; Dome Realty Co. v. Gould, 285 Mass. 294, 189 N. E. 66; Watts v. Gordon, 127 Tenn. 96, 153 S. W. 483; American Bonding Co. v. Laigle S. & L. Co. 111 Ark. 151, 163 S. W. 167; 3 Fletcher, Cyc. Corp. (Perm. ed.) §§ 1104, 1109. There is no basis for a holding that the appropriation of plaintiff's assets by Storr for his personal benefit was unauthorized.

Where the authority of the officer is not conferred by formal action, it may be established by evidence other than the records of the corporation. Gross Iron Ore Co. v. Paulle, Sweet v. Lang, and Anderson v. Missouri State L. Ins. Co. *supra;* Hoosier Lbr. Co. v. Spear, 99 Ind. App. 532, 189 N. E. 633. Control and domination of a corporation may be exercised by a minority as well as a majority stockholder. The amount of stock owned by the stockholder exercising such control is not conclusive on that issue. 1 Fletcher, Cyc. Corp. (Perm. ed.) p. 143, § 41, note 1. In Jenson v. Toltec Ranch Co. (C. C. A.) 174 F. 86, a case similar to this, an officer, the holder of one share of stock in a corporation in which four other officers each held one share and the other 995 shares were held by the principal owner, permitted to do so for a period of

almost six years by the directors and stockholders, was held to have been authorized to engage in *ultra vires* acts and misappropriations of corporate property. In Anderson v. Missouri State L. Ins. Co. *supra*, a minority stockholder, holding 30 per cent of the stock was held to have been authorized to misappropriate corporate assets for his own benefit and that of other corporations controlled by him by a surrender to him of corporate power and permitting him to control and dominate the corporation. See Dome Realty Co. v. Gould and other cases cited *supra*.

It is urged that plaintiff had no knowledge of the transfers by Storr to defendant until after they had been made. This is not decisive. The transfers were within the authority conferred upon Storr. It is sufficient to show that the acts done were within the authority granted, and it is not necessary to show such authority with respect to each irregular act. The general authority comprehends the particular case. Anderson v. Missouri State L. Ins. Co. and other cases *supra*. Plaintiff is charged with Storr's knowledge under these circumstances. State Bank of Morton v. Adams, 142 Minn. 63, 170 N. W. 925.

Plaintiff contends that all acts by Storr in the use of its corporate name and organization were without its knowledge and consent, with the intent to hinder and delay, if not defraud, creditors, by placing his property beyond their reach. The contention does not help its case where, as here, it appears that it has consented and acquiesced in the acts of which it complains. In some cases the facts asserted would justify a court in disregarding the corporate entity altogether. Where the corporation is used by an individual as an instrument of fraud, or to hinder and delay and, if possible, defraud creditors, or for other wrongful purposes, "courts will go as far as necessary in disregarding the corporation and its doing in order to accomplish justice." Matchan v. Phoenix Land Inv. Co. 159 Minn. 132, 138, 198 N. W. 417, 420.

Defendant contends that Storr not only had authority to make the transfers but that all of his acts were ratified by the stockholders. Inasmuch as our decision upon the question of authority

disposes of the case, we do not deem it necessary to pass on this question.

Since undisputed evidence requires findings that plaintiff authorized Storr to transfer its property, defendant is entitled to judgment.

Reversed with directions to enter judgment in favor of defendant.