**CENTRAL NATIONAL BANK AND TRUST COMPANY OF DES MOINES,**
Appellee,

v.

**L. H. WAGENER, L. H. Wagener, Inc. and Dorothy Wagener, Appellants.**

No. 54265.

Supreme Court of Iowa.

Feb. 9, 1971.

William B. Perry, Storm Lake, for appellants.

White, White, Prichard & Flores, Storm Lake, for appellee.

BECKER, Justice.

This is a judgment creditor's action in equity under Iowa Code, 1966, section 630.16 et seq. to subject property alleged to be the property of judgment debtor L. H. Wagener to legal process for the benefit of plaintiff judgment creditor. Judgment and decree was entered in favor of plaintiff and against defendants. Defendants appeal. We affirm.

On March 30, 1967 plaintiff obtained judgment against L. H. Wagener in the sum of $39,754.31. Execution was issued and returned unsatisfied on September 14, 1967. This action was started March 28, 1968.

Division I of plaintiff's petition alleges L. H. Wagener transferred 298 shares of stock to his wife Dorothy Wagener, that the transfer was invalid, without adequate consideration and made to hinder, delay and defraud plaintiff. Defendant denied the allegations. The trial court agreed with plaintiff, placed a lien against the stock and ordered execution sale thereof.

Division II of plaintiff's petition alleges the assets held by L. H. Wagener, Inc., a corporation, are the assets of L. H. Wagener, individually, the corporation is nothing more than the personal business of the individual. L. H. Wagener operated the corporation as a subterfuge and means of hindering and evading the collection of his personal debts. A lien was sought against the assets of the corporation including eight specifically described pieces of real estate. Again defendant denied generally, trial court found for plaintiff, imposed a lien on the corporately held property and ordered execution.

L. H. Wagener and his wife Dorothy were partnership owners of an automobile business prior to 1950. In that year they incorporated the L. H. Wagener, Inc., as sole owners. Three hundred shares of stock were issued, 299 to L. H. Wagener and one share to Dorothy. Mr. Wagener gave Dorothy a personal note dated November 27, 1950 for $29,800 payable on demand; interest was 7 percent per annum payable annually. This note is said to represent Dorothy's one-half share in the partnership, the assets of which went into the corporation. Under the terms of the note Mr. Wagener pledged 298 shares of his stock as security but payor had the option to either pay the note in cash or deliver the 298 shares in full settlement. A stock certificate was issued for 299 shares to

Mr. Wagener and left with other corporate papers. Mr. Wagener was president of the corporation and Dorothy was secretary. It is not clear who had actual physical possession of the stock certificates. No stock, other than the 300 shares, was ever issued.

The existence of the note and pledge were not made known to anyone but the two sole stockholders. No interest was paid on the note. On March 5, 1965 Mr. Wagener signed the transfer clause on back of the stock certificate transferring 298 shares of stock to his wife. However the transfer was never reflected on the stock transfer stub book, no new certificates were ever issued and the corporate records are silent as to the transfer except for a reference in the minute book dated November 27, 1965 recognizing the transfer and directing the secretary to make transfer on the stock records. This transfer was never made.

Since the organization of the corporation Wagener used it to engage in various business including insurance, highway construction, real estate, financing other contractors, guaranteeing for a fee the performance bonds of other contractors and sundry other business enterprises.

Early in January 1965, in a rather complicated business transaction, Wagener agreed to guarantee $70,000 of a $100,000 note from the Marric Company, another construction firm. This note evidenced a loan from plaintiff bank to Marric Company. During the preliminary negotiations Mr. Wagener represented to the bank officers that his personal net worth was about $250,000, most of which was represented by ownership of stock in defendant corporation. A corporate financial statement as of January 15, 1965, on a form required by the Iowa State Highway Commission, was furnished the bank. This statement showed a corporate net worth of $248,000 and ownership by Mr. Wagener of 299 of the 300 shares issued by the corporation. We find this information was intended to, and did, furnish corroboration for Wagener's representation that his net worth was about a quarter of a million dollars, mostly in L. H. Wagener, Inc. corporate stock. Subject to the accuracy of the valuations placed in corporate assets, the information was true at the time made. What was not known or revealed was that Wagener would shortly transfer his entire fortune to his wife in payment of an unrevealed lien of 15 years duration.

Mrs. Wagener testified she knew of the negotiations with the bank. She also knew that if her husband transferred 298 shares of his stock to her his net worth was practically zero. She knew of no other assets that he might own except the one remaining share of stock. It should be noted the automobiles personally used by Mr. and Mrs. Wagener and their son, and a fiberglass boat were all owned by the corporation. Mr. Wagener also testified that after transferring the 298 shares he was without substantial assets.

No explanation of why the fifteen-year-old note was called on March 5, 1965 was ever given. Also defendants failed to explain the apparent inadequacy of consideration. The note, with interest, had a face value of about $72,000. The corporate value of the stock by the financial statement certified by defendants was over $245,000. Defendants are in no position to gainsay this evaluation.

On March 19, 1965 Wagener signed the $70,000 guarantee. Plaintiff also showed transactions by Mr. Wagener under which he incurred additional personal indebtedness of nearly $200,000. Each transaction benefited the corporation. None were noted by the corporation as liabilities. All were accomplished under financial statements showing rapidly rising net worth and ownership of 299 shares of stock in L. H. Wagener.

I. We need not repeat the elements necessary to prove fraud, the character of the evidence required or the burden of proof. These matters were recently reviewed in Hall v. Wright, 261 Iowa 758, 766, 767,

156 N.W.2d 661 (1968) as to law cases and in Detrick v. Aetna Casualty and Surety Co., 158 N.W.2d 99, 105 (Iowa 1968) as to equity cases. Cf. Alpen v. Chapman, 179 N.W.2d 585, 589, 590 (Iowa 1970).

Enough facts have been recited to substantiate our conclusion. The trial court very properly fortified its conclusion in much greater detail. We approve his conclusions of fact and law. We decline to extend this opinion or add to the volume of printed reports by further detailing the complicated financial maneuvers resulting in defendant L. H. Wagener securing $200,000 worth of personal credit while his personal assets were of no substantial value.

In Travelers Indemnity Co. v. Cormaney, 258 Iowa 237, 138 N.W.2d 50 (1965), some principles were stated which have relation to this case. Quoting from First Nat. Bank of Iowa City v. Hartsock, 202 Iowa 603, 604, 210 N.W. 919, at page 245 of 258 Iowa, at page 55 of 138 N.W.2d:

" ' "A transaction may, of itself and by itself, furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of the defendants, and even the evidence of witnesses. The circumstances attending and following a transaction are often of such a character as not to leave even a shadow of doubt as to the real object and motive of the parties engaged in it. * * * The motives and intentions of parties can only be judged of by their actions and the nature and character of the transaction in which they are engaged. These often furnish more conclusive evidence than the most direct testimony." '

" * * * 'The essential issue involves the fraudulent intent. Blood relationship between the parties is not per se a badge of fraud, although it strengthens the inference that arises from the circumstances, *and requires strict proof of* the consideration and *the fairness of the transaction.' "*

In Meltzer v. Shafer, 215 Iowa 785, 792, 244 N.W. 851, 854, the court quoted from McCormick Harvesting Mach. Co. v. Perkins, 135 Iowa 64, 68, 110 N.W. 15:

" ' * * * It would be inequitable to permit his wife, after allowing him to obtain credit upon the apparent ownership of this property for so long a time to set up a claim thereto against the creditors who had trusted him in reliance upon such ownership. She must be presumed to have known that, in the ordinary course of business, he would be likely to obtain credit by reason of his ostensible ownership, and, having consented that the land stand in his name, she ought not to be heard to say, as against those extending credit in reliance on the security which she permitted him to hold out, for the purpose of defeating the collection of the indebtedness, that she, rather than he, owned the property. These principles are recognized in practically all the authorities.' " Other Iowa cases in support of the conclusions reached are, Carbiener v. Montgomery, 97 Iowa 659, 66 N.W. 900 (1896); Harvey v. Phillips, 193 Iowa 231, 236, 186 N.W. 910 (1922).

Suffice to say we have studied the records and exhibits carefully. Evidence to support the trial court is abundant. Plaintiff's burden of proof was fully met. The trial court so found and we agree.

■ II. The court was also correct in disregarding the corporate entity to allow plaintiff judgment creditor to directly reach the corporate assets. The evidence clearly shows the use of the corporation as a tool to juggle assets and liabilities in such manner as to create the impression of a large net worth in Mr. Wagener individually while in fact the net worth was all in the corporation. New business ventures were never approved in the corporate minutes, substantial living assets were carried in the corporate name but used by the stockholders personally, communications in relation to the business were made in such fashion that only Mr. Wagener could know whether he spoke individually or as president of the corporation, assets in the form of current accounts receivable were carried on the

corporate books while liabilities in the form of current obligations and guarantees were assumed by Mr. Wagener individually, but payments on these personal debts were paid by the corporation without explanation. No single one of these practices is necessarily decisive. Taken together they show a consistent pattern disregarding the corporate entity when it suited Mr. Wagener's convenience and use of the corporate entity when such use was advantageous to him personally. Under such circumstances the corporate entity may properly be disregarded. Central Fibre Products Co. v. Lorenz, 246 Iowa 384, 66 N.W.2d 30 (1954).

Mrs. Wagener's positions as one of two original incorporators, secretary and member of the board of directors, one of two sole stockholders, and spouse of the other stockholder, all charge her with knowledge of the manner of operation of the various Wagener enterprises.

III. Defendant's rely on Olympic Capital Corporation v. Newman, 276 F.Supp. 646, 655 (D.C., 1967) where the court said:

" * * * The court has been able to find no situation in which the doctrine of alter ego has been applied to a fact situation such as it presented to the court in this case. Alter ego would appear to be limited to the situation where there is reason to *disregard a corporate entity* to reach individuals, it has no applicability in disregarding the existence of an individual to reach corporate assets."

The Olympic Capital Corporation's case presented a Federal District Court venue problem arising out of a very complicated financial fact situation. Whatever validity the quoted observation may have had for the case in question, it cannot be accepted in this jurisdiction for plaintiff's argument that assets may be traced from a corporation to an individual but not vice versa. This court and other courts have disregarded the claimed corporate ownership of assets to satisfy individual debts where the facts dictated a necessity so to do. Central Fibre Products Co. v. Lorenz, supra;

Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941); Lake Park Development Co. v. Paul Steenberg Const. Co., 201 Minn. 396, 276 N.W. 651 (1937).

Affirmed.

All Justices concur, except MOORE, C. J., who takes no part.