HOOSIER LUMBER COMPANY *v.* SPEAR.

[No. 14,762. Filed April 7, 1934. Rehearing denied May 18, 1934. Transfer denied January 7, 1935.]

*Cooper, Royse, Gambill & Crawford,* and *William H. Beeler,* for appellant.

*Donald Baker,* and *Mark W. Lyday,* for appellee.

KIME, J.—This was an action in one paragraph, on account, brought by the Hoosier Lumber Company, a corporation, against the appellee for lumber sold in the amount of $1238.63. To this complaint appellee filed an answer in general denial and three paragraphs of special answer, the last of which was a plea of payment. The second paragraph alleged that appellee had, for many years, dealt with the Hooton Lumber Company, of which W. J. Stuebe was general manager; that during that time he built a number of houses, which houses Stuebe represented were being built for the Hooton Lumber Company; that appellee later learned that he had not been building them for the Hooton Lumber Company but for Stuebe himself. That in part payment for the building of these houses appellee was given Stuebe's personal note in the sum of $1238.45. That when the appellant corporation was formed Stuebe was a large stockholder and was elected president, director, and made general manager thereof and, in order to induce the appellee to purchase all his lumber from appellant,

instead of from the Hooton Lumber Company, where he had been doing business for many years, Stuebe told appellee that the amount of the note, which he held against Stuebe, would be applied upon the purchase of lumber from the appellant and that appellee then did purchase his lumber from appellant for a period of several years and paid for all such lumber with the exception of an amount equal to the amount of the note and that the appellant ratified and confirmed this contract.

The third paragraph alleged substantially the same facts and in addition that the appellant had full knowledge of the arrangements, between appellee and Stuebe, and acquiesced in and impliedly adopted, ratified, and confirmed such contract.

To the second, third, and fourth paragraphs of answer the appellant filed a general denial, thus closing the issues. Trial was had before a jury, which resulted in a finding for the defendant, the appellee here, upon which finding the court rendered judgment that the plaintiff take nothing by his complaint. Appellant filed a motion for a directed verdict, which was overruled. Following the judgment appellant filed a motion for a new trial, which was also overruled. The error relied on for reversal was the overruling of a motion for a new trial.

The grounds set forth in the motion for a new trial are that the verdict is not sustained by sufficient evidence; that it is contrary to law; error of the court in giving to the jury each of certain instructions requested by the appellee; error in refusing to give each of two instructions at the request of the appellant; error of the court in overruling the motion for an instructed verdict; and also error in the admission of certain evidence over the objection of the appellant.

The evidence disclosed that Stuebe, who had been the

general manager of the Hooton Lumber Company, became the president, controlling stockholder, a director, and general manager of the appellant company, which was organized in the summer of 1927; that his wife owned some stock therein and that one Harry R. Harrison, who owned $2000.00 worth of stock, was a director and secretary-treasurer of the company, and Joseph Straughan, who, as vice-president and director, kept the books and accounts of the appellant corporation, together with Harrison.

That in November, 1927, appellee began purchasing lumber and materials from appellant and continued to so purchase lumber and materials until, at least, the 10th day of July, 1930; that appellee paid on account, to appellant, money on July 16, 1928, April 15, 1929, June 7, 1930, June 14, 1930, June 19, 1930, and on the 8th day of August, 1930, gave appellant a check in the sum of $120.08, which paid his account in full down to the amount of the note in question.

Appellee testified that in August of 1927 Stuebe came to him and asked him to come over to the Hoosier Lumber Company and buy all his lumber; that if he would do this he (Stuebe) had an arrangement made with the Hoosier Lumber Company whereby the amount of the note in question would be credited to the material purchased by the appellee; that immediately thereafter he did start buying lumber and material from the appellant company; that shortly thereafter he had a conversation with Harrison, the secretary-treasurer and the arrangement made with Stuebe was discussed and Harrison told the appellee that it was all right.

The evidence further disclosed that Harrison and Straughan kept the books of the company over this entire period. That later, in 1930, in some unexplained manner, Stuebe quit being president of appellant company and none of the witnesses could account for his

whereabouts; that the appellee tendered the note in question to the appellant and offered to endorse the same at the time he made his final payment of $120.08, as above shown, which tender was kept good by way of pleading and was also made in open court during the trial.

The appellant contends here that Stuebe was, in effect, paying a personal debt with the assets of the corporation, from which the corporation itself received no benefit and that this was an *ultra vires* act and, consequently, could not be ratified by the corporation, but there was ample evidence from which the jury could find, as it evidently did, that the contract between its president and general manager, and of which the vice-president and secretary-treasurer had notice, was of some benefit to the corporation and that the knowledge of the three officers of the corporation was the knowledge of the corporation itself, and from the acquiesence of these officers the ratification of the contract could be inferred.

In the case of *National Life Insurance Company* v. *Headrick et al.* (1916), 63 Ind. App. 54, 112 N. E. 559, Felt, P. J., speaking for the court, said (p. 58) : "Ratification by a corporation may be shown by conduct without any formal action of its board of directors. Corporations act only by and through their officers and agents and ratification may be inferred from affirmation or from passive acquiesence, or from the receipt of benefits with knowledge. Knowledge like other facts need not be proven by any particular kind or class of evidence and may be inferred from the facts and circumstances," and cited cases.

The evidence here disclosed that from the knowledge possessed by the officers it was reasonable for the jury to infer that they had ratified the acts of Stuebe and that the profit made from the business of the appellee

was of sufficient benefit to the corporation to sustain the contract.

McMahan, J., speaking for the court in the case of *Seymour Improvement Co.* v. *Viking Sprinkler Company* (1928), 87 Ind. App. 179, 215, 161 N. E. 389, said, citing, for his authority, Thompson on Corporations (3rd. Ed.) §1783: "It is settled law that a corporation may ratify the acts of its agents done in excess of their authority, and such ratification may, in many cases, be inferred from an informal acquiesence in those acts. The circumstances which put a corporation upon inquiry are the same as those which will put an individual upon inquiry. A corporation will be charged with notice of matters affecting the corporation where its officers have knowledge of the facts which would put a prudent person on inquiry that would lead to his knowledge. The law imputes to a corporation knowledge of facts which its directors ought to know, in the exercise of ordinary diligence in the discharge of their official duties, when the imputation of such knowledge to the corporation is necessary to protect the rights of third persons. The directors are presumed to know that which it is their duty to know and which they have the means of knowing."

There are enough circumstances here to put the corporation upon inquiry and since they did not make inquiry their acquiesence over this period of four years is certainly such as would impute to the corporation knowledge which its directors had or ought to have had under the circumstances.

From the above it is clear that the verdict of the jury is sustained by sufficient evidence and is not contrary to law and that the ocurt did not err in refusing to instruct the jury to return the verdict for the plaintiff.

The appellee here, when on the witness stand, was asked to state the average of lumber purchased from the Hooton Lumber Company and he answered: "Approximately ten or twelve thousand per year." This evidence was competent in that it shed some light on whether or not the business of appellee was of any benefit to the Hoosier Lumber Company, under the alleged contract.

Other evidence was admitted which is questioned in the motion for a new trial but it is not shown that this evidence is of such a character as necessitates a reversal of this cause. Even though it might be said to be erroneous it can not be said to be prejudicial to the rights of the appellant.

There is also alleged error predicated upon the giving of several instructions and the refusal to give two others, but the charge as given by the court, when taken as a whole, stated the law fairly and the jury was properly instructed. We find no error in the action of the court relative to the giving of these instructions. The judgment of the Vermillion circuit court is affirmed and it is so ordered.