FAYETTE LUMBER COMPANY v. FAUGHT.

[No. 15,294. Filed December 14, 1936.]

*Roemler, Chamberlain & Rust,* for appellant.

*E. R. Himelock,* for appellee.

CURTIS, J.—The appellant, The Fayette Lumber Company, an Indiana corporation of Connersville, Indiana, engaged in the sale of lumber and building materials, filed suit in one paragraph of complaint against appellee, also of Connersville and engaged in heating and plumbing business, on January 5, 1933, in the Fayette Circuit Court, and claimed an indebtedness for goods sold and delivered to appellee in the sum of $538.98, filing therewith a bill of particulars of said account, running from April, 1927, to April, 1932.

To the complaint, appellee filed his answer in five paragraphs. The first was a general denial and the second a plea of payment. The third was an admission of indebtedness in the sum asked for by appellant, coupled with

an allegation that appellant, before the commencement of suit, agreed to receive labor, service and materials from appellee in payment of said indebtedness, which labor, service and materials appellee rendered and furnished to appellant in the sum of $1,240.66, and that appellant paid appellee $503.40, leaving a balance due appellee of $737.26, which exceeds the amount due and asked for by appellant. Appellee's fourth paragraph of answer recites the same general allegations as contained in his third paragraph with the additional averment that one E. A. McKnight was at all the times referred to, the sole manager of appellant company and clothed with full authority to act, and that he, the said McKnight, made the agreement referred to under which appellee furnished to appellant and to said McKnight labor, services and materials in the sum of $1,240.66 and that said McKnight paid to appellée $503.40 on that account, leaving a balance of $737.26 due appellee from appellant, which last named sum is more than the account sued on by appellant; a bill of particulars designated as Exhibits A and B was filed with appellee's fourth and fifth paragraphs of answer, but an amended bill of particulars was later filed by appellee showing an open account running from April, 1928, to May, 1931, including an alleged unaccepted proposal from appellee to said McKnight, for installation of plumbing in four apartments for the sum of $996.84. Appellee's fifth paragraph of answer was by way of setoff, alleging an indebtedness from appellant in the sum of $737.26 for labor, service and material furnished said appellant and said McKnight at appellant's special instance and request as shown by original bill of particulars, A and B, and further alleging that appellant owes appellee $198.28 more than appellee owes appellant, and also asking for judgment in the sum of $200.00. To each of the appellee's second and third paragraphs of answer

the appellant filed its reply in general denial. To appellee's fourth and fifth paragraphs of answer appellant addressed a motion asking that appellee be required to make his said fourth and fifth paragraphs more specific by filing a more complete bill of particulars, and as to his fourth paragraph that he be required to make the same more specific by stating fully and definitely such facts as would sustain the conclusion that E. A. McKnight "had full and complete authority to make the agreement with this defendant" as therein alleged. Upon these motions the court made no ruling. On the day of trial, however, appellant filed its reply to so much of appellee's third, fourth and fifth paragraphs of answer separately and severally, as set up an alleged agreement with one E. A. McKnight that appellee agreed to furnish labor, services and materials to said McKnight in payment for any sums due appellant and that pursuant thereto such labor, services and materials were furnished to the said McKnight and credit claimed on the amount due from appellee to appellant, and said appellant alleged that the said McKnight had no authority to bind it to any such agreement; that such services, labor and materials were furnished for the sole use and benefit of the said McKnight on his own private property and that appellant received no advantage, benefit, use or profit therefrom and was under no obligation to pay therefor and that as to the balance of appellee's said third, fourth and fifth paragraphs of answer separately and severally appellant answered by general denial.

The cause was tried by the court without a jury and a finding was made, and a judgment rendered that the amount due appellant from appellee was $519.54; that the amount due appellee from appellant was $689.30 and a judgment was rendered for appellee against appellant for the difference in the sum of $169.76. The

appellant seasonably filed its motion for a new trial which was overruled with exceptions to the appellant. Thereupon the appellant prayed and perfected this appeal. The error relied upon for reversal is the overruling of appellant's motion for a new trial. The causes or grounds alleged in the motion for a new trial are: "(1) The finding and decision of the court is not sustained by sufficient evidence. (2) The finding and decision of the court is contrary to law."

We do not deem it necessary to set out verbatim any of the pleadings, having heretofore in a general way stated what they contain. A part of the evidence was by stipulation which we now set out. "(1) It is stipulated and agreed by the parties to this suit that the defendant J. Earl Faught is indebted to the plaintiff, the Fayette Lumber Company, a corporaion, on the debt and account sued upon in this cause in the sum of $519.54, which sum is due and unpaid to the plaintiff in said cause.

"(2) It is further stipulated and agreed by the parties to this suit that the defendant, J. Earl Faught, furnished labor, material and supplies to E. A. McKnight as shown in Exhibit A, filed with the answer of said defendant, in the total sum of $1,202.70, on which there was a credit of $513.40, and that the balance remains due the defendant in the total sum of $689.30; that said sum is due and unpaid." The above stipulation was supplemented by the oral testimony of the appellee, the said McKnight and J. Ralph Himelick for the appellee, and for the appellant by Spencer Bublitz who became manager of the appellant company after McKnight quit as its manager.

The paramount question before the trial court was whether or not the evidence showed that the appellant was bound by the promises and agreements of McKnight. In determining that question the trial court's duty was to weigh the evidence. Our

duty on appeal is to determine whether the trial court's decision that the appellant was bound is sustained by some competent evidence and whether such decision is contrary to law. McKnight testified in substance that he had been the manager of the appellant company for fourteen years up to April, 1931, and that the appellant was a corporation in which he was also a stockholder and director and that as such manager he had charge of the business from the retail standpoint at Connersville, Indiana, and had authority to buy and sell, charge and collect accounts without interference from any other person in the corporation and that during the latter years of his management dealings were had with the appellee; that the appellee did some work for the corporation and some for him individually and that these accounts were never settled so far as "sitting down and having a final settlement and are not settled yet." He recalled building the apartment house mentioned in the pleadings and said that he could not remember having had a conversation with the appellee about the payment of his account or making any remark to the appellee about allowing his account with the Lumber Company to go on McKnight's bill; that he never asked the appellee for his bill nor the money that appellee owed the lumber company and that they only exchanged statements but that these were not supposed to be set off against each other; that when purchases were made by either party they were put on statements and invoices were mailed at the first of every month and that was the extent of the transaction.

McKnight then further testified to the effect that he did not recall any agreement between him and the appellee that the bill of the appellant was to be offset by his individual account.

His evidence was in direct conflict with the evidence of the appellee whose evidence was that their agreement

was to offset one account against the other. We quote a part of the appellant's condensed recital of the appellee's testimony as follows: "We had not been buying the bulk of it there (meaning materials) but from that time on I did buy from them in order to get the account that McKnight owed me settled. Am in the plumbing and heating business. I have to buy materials from wholesalers and jobbers and in buying from the lumber company I was buying materials that I used in my business. After this arrangement was made between me and McKnight monthly invoices were sent me—stuff we purchased through the month; no one ever sent me a bill. I was never required to pay the lumber company anything until McKnight wasn't there; while he was there as manager was never requested to pay anything. There was no further conversation about my bill down there. There is still a balance due me and it has not been paid; that is the story as far as I know."

The evidence discloses that these transactions covered a period of several years and while the evidence is conflicting yet we think it is ample upon which to base the conclusions which the trial court reached that the appellant was bound by the agreement the appellee made with McKnight. It is elementary that this court will not weigh conflicting evidence. We must accept as true the evidence of the appellee as to what the arrangement with McKnight was and the only question left for decision is whether or not there was competent evidence to sustain the trial court in concluding that the appellant company was bound by McKnight's agreement.

The law that is applicable to this case was announced by this court in the case of *Seymour Improvement Company* v. *Viking Sprinkler Company* (1928), 87 Ind. App. 179, 161 N. E. 389, wherein the court said (p. 215): "It is settled law that a

corporation may ratify the acts of its agents done in excess of their authority, and such ratification may, in many cases, be inferred from an informal acquiescence of those acts. The circumstances which put a corporation upon inquiry are the same as those which will put an individual upon inquiry. A corporation will be charged with notice of matters affecting the corporation where its officers have knowledge of facts which would put a prudent person on inquiry that would lead to this knowledge. The law imputes to a corporation knowledge of facts which its directors ought to know, in the exercise of ordinary diligence in the discharge of their official duties, when the imputation of such knowledge to the corporation is necessary to protect the rights of third persons. The directors are presumed to know that which they have the means of knowing."

The above case was followed by this court in the case of *Hoosier Lumber Company* v. *Spear* (1935), 99 Ind. App. 532, 189 N. E. 633. We heartily approve the statement of the law as above set forth. We believe that the decision of the court is sustained by sufficient evidence and that it is not contrary to law.

Judgment affirmed.