**IN THE COURT OF APPEALS OF IOWA**

No. 17-1422
Filed August 15, 2018

**WOODRUFF CONSTRUCTION, LLC,**
    Plaintiff-Appellant,

**vs.**

**K.W. "CASEY" CLARK,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Chickasaw County, James C. Bauch,

Judge.


        Plaintiff appeals the district court decision against piercing the corporate veil

to enforce a judgment debt. **REVERSED AND REMANDED.**



        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, PC, West Des

Moines, for appellant.

        Ronald C. Martin and Mark H. Rettig of Day Rettig Martin, PC, Cedar

Rapids, for appellee.



        Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Woodruff Construction, LLC (Woodruff), appeals the district court's decision not to pierce the corporate veil of Clark Farms, Ltd. (Clark Farms) and enforce a judgment debt against K.W. Clark (Clark). We reverse.

## I.     Background Facts and Proceedings

Clark Farms is an Iowa corporation, with articles of incorporation filed in 1997, then reincorporated in 2001 following an administrative dissolution.[1] Clark Farms is in the business of biosolids management. Clark Farms has also done business under the name Clark Contract Services but never registered the name with the Iowa Secretary of State. Clark is the president, secretary, and treasurer of the corporation. He is also the sole owner and director of the corporation. Clark owns and operates two other entities, Casey Clark Farms and White Pines Farm, which are sole proprietorships.

Woodruff is a commercial industrial construction company. In 2009, Woodruff contracted with the city of Leon, Iowa, to act as general contractor during the construction of a wastewater treatment facility. In April 2010, Woodruff contracted with Clark Farms for lagoon sludge removal. Clark Farms began work, then in 2011 abandoned the project when Clark determined he had underbid the contract, leaving the work incomplete. In July 2012, Woodruff brought a breach of contract action against Clark Farms. In September 2014, Woodruff obtained a

---

[1]  Prior to being called Clark Farms, Ltd., the company had existed first as Stuart Menlo Pit and Lagoon and then as a partnership run by Clark and a friend, whom he bought out in 1996.

judgment against Clark Farms for $410,066.83 plus interest.[2]  The court ruled on a motion to amend and enlarge filed by Clark on January 15, 2015.

Clark Farms failed to pay the judgment.  In June 2015, Woodruff brought suit to pierce the corporate veil of Clark Farms and recover personally from Clark, and impose a constructive trust and equitable lien on all assets of Clark Farms.  In a deposition that July, Clark stated Clark Farms still existed but was not bidding any projects and no longer had any employees aside from the bookkeeper.  By the time of trial, Clark Farms had no employees.

In April 2017, the court held a bench trial.  The court issued its ruling in August, denying Woodruff's request to pierce the corporate veil and denying the request to impose a constructive trust and equitable lien on the assets of Clark Farms.  Woodruff appeals only the piercing the corporate veil issue.[3]

## II.    Standard of Review

The parties in this case do not agree on the appropriate standard of review. Woodruff argues piercing the corporate veil is to be reviewed de novo.  Clark identifies the standard of review as for correction of errors at law—that the question is one at law to be decided by the trier of fact.

Piercing the corporate veil has roots in both courts of equity and law.  *Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 736 (7th Cir. 2004). Under our rules of appellate procedure, cases tried in equity will be reviewed de

---

[2]    The judgment included the cost to have another contractor finish the work and a liquidated damages penalty on Woodruff's contract with Leon.  Clark Farms did not receive any payment for work completed.  The court found any misunderstanding as to the project's scope or expense were Clark's fault.

[3]    As Clark Farms was not party to the suit, the court could not have imposed the requested relief of the trust and lien.

novo, while cases tried at law are reviewed for correction of errors at law. Iowa R. App. P. 6.907. "Piercing the corporate veil . . . is not itself an action; it is merely a procedural means of allowing liability on a substantive claim." *Int'l Fin. Servs. Corp*, 356 F.3d at 736. Some sources refer to the doctrine as an equitable one. 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 41.29 (2017); 6 Matthew G. Doré, Iowa Practice Series, *Business Organizations* § 39:20 ("[A]lthough piercing the corporate veil is an equitable remedy, the Iowa courts have held that factual questions related to piercing are for the jury."). The imposition of "liability on a shareholder for corporate obligations where there is no basis for liability at law is necessarily an equitable remedy." *Minger Constr., Inc. v. Clark Farms, Ltd.*, No. 14-1404, 2015 WL 7019046, at *6 (Iowa Ct. App. Nov. 12, 2015) (McDonald, J., concurring in part and dissenting in part); *see also Stacey-Rand, Inc. v. J.J. Holman, Inc.*, 527 N.E.2d 726, 728 (Ind. Ct. App. 1988) (noting a request to pierce the corporate veil to be equitable by nature).

The issue before us is that of piercing the corporate veil, with no additional claims at law requiring a different review. The only remedy requested is an equitable remedy—to shift liability to the owner of the corporation for equitable reasons. Woodruff filed the claim in equity. Clark made no attempt to move the case to a court at law. We will treat the case as it was tried below, as a claim in equity.[4]

---

[4] Although some recent cases decided by this court were reviewed for correction of errors at law, these cases were filed and tried at law. *See, e.g.*, *Laddie Nachazel Family Living Trust v. JKLM, Inc.*, No. 16-2045, 2018 WL 739266, (Iowa Ct. App. Feb. 7, 2018) ("We review actions tried at law for a correction of errors at law."); *Torstenson v. Birchwood Estate, L.L.C.*, No. 16-0118, 2017 WL 1086222, at *3 (Iowa Ct. App. Mar. 22, 2017) ("Both parties agree this case was filed and tried at law."); *see also* Petition at Law, *Minger Constr., Inc. v. Clark Farms, Ltd.*, No. 03301LACV025440, 2012 WL 10703904, at *1 (Iowa

Our review of equitable proceedings is de novo. Iowa R. App. P. 6.907. We may give weight to the court's factual findings, but we are not bound by those findings. *Porter v. Harden*, 891 N.W.2d 420, 424 (Iowa 2017). "We give respectful consideration to the district court's fact findings, especially when witness credibility is an issue, but we are not bound by those facts." *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 629 (Iowa 1996); Iowa R. App. P. 6.904(3)(g). We have a duty to examine the entire record and adjudicate anew the issues properly presented. *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017).

### III. Analysis

Woodruff seeks to have us pierce the corporate veil on Clark Farms, and hold Clark personally liable for the judgment against Clark Farms.

The corporate veil is central to the concept of a corporation—separation between the corporate entity and the stockholders, limiting their personal liability to the extent of their investment. *Ross v. Playle*, 505 N.W.2d 515, 517 (Iowa Ct. App. 1993); *see also* Iowa Code § 490.622(2) (2016) ("Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation."). "But the corporate device cannot in all cases insulate the owners from personal liability." *Ross v. Playle*, 505 N.W.2d at 517.

Where the corporation is "a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote

---

Dist. Ct. Dec. 14, 2012) (bringing claims at law against Clark Farms and Clark). *Cf. Algreen v. Gardner*, No. 17-0104, 2018 WL 3057438, at *2 (Iowa Ct. App. June 20, 2018) (reviewing de novo a corporate-veil-piercing case tried in equity).

injustice[,]" the corporate veil may be pierced. *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 810 (Iowa 1978). Plaintiffs must prove exceptional circumstances exist to warrant piercing the corporate veil. *C. Mac Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.*, 412 N.W.2d 593, 597–98 (Iowa 1987).

> The burden is on the party seeking to pierce the corporate veil to show the exceptional circumstances required. Factors that would support such a finding include (1) the corporation is undercapitalized; (2) it lacks separate books; (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation; (4) the corporation is used to promote fraud or illegality; (5) corporate formalities are not followed; and (6) the corporation is a mere sham.

*In re Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000); *see also Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 6 (Iowa 2008). The six factor list is not exhaustive, and we will pierce the corporate veil where necessary for equitable purposes or to prevent injustice, fraud, or fundamental unfairness. *Boyd v. Boyd & Boyd, Inc.*, 386 N.W.2d 540, 544 (Iowa Ct. App. 1986).

Woodruff makes several claims but primarily asserts Clark Farms was undercapitalized. Other factors claimed include failure to follow corporate formalities, failure to keep separate books, commingled finances with Clark, and that the corporation is a sham.

### A.     Undercapitalization

Undercapitalization occurs when the business's capitalization is insufficient to support the business considering its nature and the risks. *Cmty. Care Ctrs., Inc. v. Hamilton*, 774 N.E.2d 559, 565 (Ind. Ct. App. 2002). The Iowa Supreme Court has examined why undercapitalization of a corporation would allow the court to reach the shareholder for corporate debts:

> If a corporation is organized and carries on business without substantial capital . . . [so] the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt the shareholders from corporate debts.

*Briggs Transp. Co.*, 262 N.W.2d at 810.

When determining if a corporation is undercapitalized, we first examine the adequacy of the capital at the time of formation. *See Algreen v. Gardner*, No. 17-0104, 2018 WL 3057438, at *5 (Iowa Ct. App. June 20, 2018). We agree with the district court that Woodruff did not provide sufficient evidence to show undercapitalization at the time of the corporation's creation in 2001. The company had assets and was profitable. Nor did Woodruff provide sufficient evidence to show Clark Farms was undercapitalized at the time it entered the contract with Woodruff.

However, the corporation's initial adequate capitalization is not determinative of adequate capitalization for the remainder of the corporation's existence. A corporation may later become undercapitalized for any number of reasons. *Id.* Exceptions permitting examination of capitalization after formation might include a change in nature of the business, an inadequately-capitalized expansion, capital transfers to the controlling shareholder which renders the initial adequacy irrelevant, or losses resulting from fraudulent manipulation of the corporation. 1 Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 41.33; *see also Scott v. AZL Res., Inc.*, 753 P.2d 897, 901 (N.M. 1988). These exceptions allow courts to disregard the corporate veil where the shareholder purposely

underfunds the business, while maintaining protections for a shareholder whose business has suffered legitimate financial reversals.

No evidence presented indicates a change in the nature of the work done by Clark Farms, or an inadequately-capitalized expansion. Whether Clark made capital transfers to himself which rendered the initial adequacy irrelevant is unclear from the record.

Conflicting testimony was presented that Clark Farms may have loaned Clark hundreds of thousands of dollars after Woodruff brought its breach-of-contract suit against Clark Farms in 2012, or that Clark loaned the money to Clark Farms. While deposition testimony of the corporation's bookkeeper clearly indicates the corporation loaned the money to Clark, and Clark himself was not clear which way the money went, we note the Clark Farms 2012 taxes show a loan from Clark to Clark Farms for over $500,000.[5] It appears from the record that the loan never entered the Clark Farms account but likely was used to pay off bank notes taken out by Clark, Casey Clark Farms, or notes otherwise guaranteed by Clark personally.

Additionally, the bank records show Clark used Clark Farms funds to pay the interest on all his notes—whether owed by the corporation or not. Clark also testified in a deposition that he had started a new LLC in Iowa performing the same work Clark Farms had previously done.

---

[5] If Clark Farms did loan Clark over $500,000 either during the lawsuit or after a judgment had been made against Clark Farms, without other assets adequate to pay the judgment, it would be the sort of transfer that would render the initial adequacy irrelevant. A corporation may not simply transfer its assets to the controlling shareholder to render itself judgment proof—such actions would merit disregarding the corporate entity.

It is unclear whether Clark Farms is undercapitalized based on the records provided. What is clear to us is that the corporation was not so obviously and purposely undercapitalized by Clark so as to merit disregarding the corporate entity on its own. Despite the loan, testimony indicates Clark Farms continues to own equipment of value Woodruff may request a lien on. We find Woodruff has not proven Clark Farms to be undercapitalized.

### B.     Commingled finances

Commingling of funds occurs when the same account is used to deposit fees and pay for expenses for both personal and business use. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf*, 588 N.W.2d 126, 126 (Iowa 1999) (discussing attorney trust account commingling). Activities such as using corporate funds for personal purposes, mixing corporate and personal accounts, and commingling assets are factors weighed under this element. *See* 1 Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 41.50.

In *C. Mac Chambers Co.*, 412, N.W.2d at 598, the court specifically noted the facts that individual obligations of the family were routinely paid by the corporation and that family finances were not separate from corporate accounts as persuasive in finding the individual personally liable. In *Briggs Transportation. Co.*, an owner failed to deposit proceeds into the corporate account and would use corporate funds to pay personal expenses. 262 N.W.2d at 810 ("Corporate funds were not segregated."). "Single entities do not pay their left hand with their right unless the exchange has little to no actual consequences . . . ." *Tyson Fresh Meats, Inc. v. Lauer Ltd., L.L.C.*, 918 F. Supp. 2d 835, 860 (N.D. Iowa 2013) (applying Nebraska law). In another case, the use of the corporation to "juggle

assets and liabilities" and payments on personal debts by the corporation without explanation were among the factors leading the court to conclude the defendant "show[ed] a consistent pattern disregarding the corporate entity when it suited [Defendant]'s convenience and use of the corporate entity when such use was advantageous to him personally." *Cent. Nat'l Bank & Trust Co. v. Wagener*, 183 N.W.2d 678, 682 (Iowa 1971).

Some elements the Eighth Circuit has examined as to commingling of assets is the source of funds used to purchase equipment for other corporate entities, lack of enforcement of promissory notes among the entities and individual, advancing funds without accounting, failure to follow normal legal formalities, and disposal of corporate assets without fair consideration. *N.L.R.B. v. Bolivar-Tees, Inc.*, 551 F.3d 722, 729–30 (8th Cir. 2008).

Testimony from both Clark and his bookkeeper, Karen Halverson, indicate the bank account for Clark Farms was used by Clark for personal purposes and his sole proprietorships. Clark testified, and the corporate ledgers and bank statements produced show, money and revenues from Clark Farms, Casey Clark Farms, and White Pines Farms all came into an account under Clark Farms. Bills for each entity were paid out of the Clark Farms bank account, using Clark Farms checks. The funds and expenses were identified and allocated to each entity per Clark's instructions to his bookkeeper, with book transfers via occasional reconciliation entries. Likewise, the ledger for Casey Clark Farms shows deposits for Clark Farms were deposited into Casey Clark Farms's account, expenses paid, and money transferred on paper. The bills paid and the notes held for all the entities were tracked together. At any given time, the Clark Farms bank account

and the Casey Clark Farms account each held assets for Clark Farms, Casey Clark Farms, White Pines Farms, and Clark personally, with only an internal bookkeeping transfer done periodically.

The balance sheets for Clark Farms included a number of notes owed to banks. Clark testified that some of those loans were to him personally, not to Clark Farms, and that Clark Farms never had a loan from one of the banks that was recorded in the Clark Farms books. However, the ledgers and balance sheets show Clark Farms paid the interest on the loans, regardless of whether they were the corporation's loans or not.

Halverson testified in deposition that Clark would often write a check on the Clark Farms account to pay for things for Casey Clark Farms or for himself personally, and the bookkeeper would then transfer the amount to an account receivable under Clark's name in the Clark Farms books. She explained, "It's just the way he did his business." Halverson would determine which entity should pay which invoice based on the type of expense. Clark would also deposit moneys owed to Casey Clark Farms directly into the Clark Farms account to go toward a receivable from personal funds. Halverson had to maintain a special file to track the transfers between Clark's personal and corporate accounts. According to Halverson, at the end of 2013, Clark owed Clark Farms $665,422. She testified that a signed promissory note exists in corporation records regarding Clark paying back any expenses paid for him or that would be in the receivable account, but that no dollar amount was specified. She also clearly testified that Clark owed money to Clark Farms, that Clark Farms did not owe Clark.

In deposition, Clark agreed he owed money to Clark Farms and he would repay "at some point in time." Then in trial, Clark testified the account receivable was money he personally owed the bank, not Clark Farms, then later testified it was money Clark Farms owed him.

Clark testified that he was required to personally sign some corporate loans as guarantor. For these loans, he sold Casey Clark Farms assets, including land and cattle, and applied the income to Clark Farms and Clark debts. These transactions were recorded in the corporation's books as loans to the corporation by Clark, despite Clark's personal liability on the debts. From the balance sheet, it appears several large bank notes were paid off around the time of Clark's "loan" to Clark Farms—but some of the debt paid off was held by a bank Clark testified never held Clark Farms notes. Moreover, the notes' payment was not recorded as a loan from Clark in the balance sheet, but rather as a negative account receivable.

While we concluded above that Clark Farms owed the money to Clark based on the tax returns, we note Clark Farms' bookkeeper was uncertain which direction money was flowing between Clark and Clark Farms. Even Clark did not appear to know whether he owed money or was owed money, changing his story from his deposition through his trial testimony. Moreover, Clark clearly testified at trial he would not make any effort to pay back any debt he did owe Clark Farms "Because the corporation is owned by me." This indicates he did not see the corporation as a separate entity from himself and did not view personal debts to the corporation as real.

Separate finances are not merely the existence of an account with the corporation's name on it. Although the moneys may have been tracked, Clark

clearly used the accounts for Clark Farms and Casey Clark Farms interchangeably, with no regard for which company should be providing money for expenses or benefitting from deposits. Clark Farms assets were kept under the name Clark Farms, but also under Casey Clark Farms. Not all assets or debts kept under the name Clark Farms were assets or liabilities of Clark Farms. We find Clark Farms finances were commingled with Clark's personal and sole proprietorship finances.

### C. Separate books

Despite the commingling of assets and funds, the corporate books may still be maintained separately. We examine evidence including the records of capital transfers in and out of the company beyond a log book entry, promissory notes, interest charged, recording personal purchases or sales on corporate books, personal use of corporate assets, and failure to document corporate activities. *See Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1389 (7th Cir. 1994) (applying Illinois law); *United States v. Walton*, 909 F.2d 915, 928 (6th Cir. 1990). *Cf. In re Pohle*, Bankr. No. 02-01327-rjh7, 2011 WL 1085787, at *3–4 (Bankr. S.D. Iowa Mar. 21, 2011) (examining closely whether records were adequate to trace and separate personal from corporate transactions in a bankruptcy discharge determination).

Little specific evidence was presented regarding separate books kept for Clark Farms. However, the testimony tended to indicate they were not separate. For example, Clark testified at trial some of the notes payable appearing on his Clark Farms corporate balance sheet were for his farming operation (Casey Clark Farms) and signed personally by him; these loans were not associated with the

corporation, were not corporate notes payable. Numerous transactions for Casey Clark Farms were tracked in the Clark Farms bookkeeping records. Clark testified the books and balance statements for Clark Farms contained corporate debts and personal notes because he was responsible for all of them. The records kept used in the filing of taxes for the corporation included all the loans listed on the balance sheets.

Both Clark and Halverson testified regarding the effort to identify and track the revenues and expenses relating to Clark Farms in the commingled accounts. However, nothing indicates any effort was made to track the loans and corresponding interest payments to personal or corporate loans, with Clark admitting both were tracked on the Clark Farms books. No specific records were kept tracking loans between Clark Farms and Clark and his sole proprietorships. It does not appear any promissory note was executed for loans from Clark to Clark Farms. According to Halverson, Clark executed a single, ongoing promissory note with no specific loan amount or date to cover all loans to him from Clark Farms. No note exists for loans from Clark to Clark Farms. Halverson entered periodic reconciliation entries into the Clark Farms books without further explanation to transfer moneys to Clark's other entities.

Based on the evidence presented, we find the Clark Farms books inadequately distinguished, tracked, and recorded Clark Farms corporate activities as a separate and distinct entity from Clark.

### D.      Corporate formalities not followed

Clark Farms was incorporated as a domestic profit corporation under Iowa Code chapter 490 in 1997. Shares were issued, officers and directors appointed,

and bylaws adopted. Unsigned letters represented minutes for annual meetings for 1997 through 2000, though two were dated in 1998, and two in 2000. The 1997 corporation was administratively dissolved by the Secretary of State as of August 3, 1998, due to failure to file a biennial report. Clark did not apply to reinstate that corporation, but instead refiled for incorporation.[6] While it was dissolved from 1998 to 2001, Clark Farms continued operations as if it were active.

The district court held the 2001 incorporation of Clark Farms was a reinstatement of the 1997 corporation. The court found determinative the new Articles of Incorporation statement that Clark Farms desired to reinstate the corporation. Because the 2001 corporation related back to the 1997 corporation, the corporate formalities performed for the 1997 corporation, including the issuing of shares, appointment of officers and directors, and the adoption of bylaws, applied to the 2001 corporation.

We find a new Clark Farms was incorporated in 2001. The reinstatement of a corporation following an administrative dissolution is a statutorily-created application process. Iowa Code § 490.1422(1). There is no statutory process to reincorporate an administratively dissolved corporation. *See* Iowa Code §§ 490.1420–.1423 (governing administrative dissolutions); *see also L.A.D., Inc. v. R & S Xpress, Ltd*, No. 4:12-cv-00164-RAW, 2014 WL 12601081, at *8 n.10 (S.D. Iowa Feb. 7, 2014) ("Under the Iowa Business Corporation Act an administratively dissolved corporation may apply to be 'reinstated' but there is no such thing as a 'reincorporation' of a dissolved corporation.").

---

6 Around the same time, Clark Farms also changed its tax status from a C corporation to an S corporation.

Even if refiled articles of incorporation could be considered an application for reinstatement, while Article XII of the 2001 articles of incorporation states an intention to reinstate the prior Clark Farms, the statutory information requirements for the application were not met. *See* Iowa Code § 490.1422(1). Moreover, even if considered an application to reinstate the corporation, the filing was untimely, as in 2001 a corporation had to apply for reinstatement within two years of the effective date of the dissolution. *See* Iowa Code § 490.1422(1) (2001). Clark filed the new articles of incorporation more than three years after the dissolution, on August 27, 2001, creating a new corporation carrying the same name as his prior corporation.

By statute, the filing of the articles of incorporation in 2001 "is conclusive proof that the incorporators satisfied all conditions precedent to incorporation." Iowa Code § 490.203(2) (2016). The articles names Clark as officer and director, appoints Clark as registered agent, and specifies the agent's address. Subsequent proof of lack of corporate formalities may include no corporate bylaws, failure to maintain registered office and agent, failure to hold an annual meeting, no board of directors or officer, failure to issue shares, lack of minute book or balance sheets, failure to file tax returns, and similar corporate governance actions. *See Minger Constr., Inc.*, 2015 WL 7019046, at *11 (McDonald, J., concurring in part and dissenting in part); *Cass v. Sands*, No. 05-1008, 2006 WL 229033, at *4 (Iowa Ct. App. Feb. 1, 2006) (regarding minute book, balance sheets).

No bylaws, corporate minutes book, or shareholder ledger were produced for the 2001 Clark Farms. Shares of the 1997 corporation were issued at the initial

meeting in 1997, and Clark appears to have considered those shares as shares of the reincorporated company in 2001. Similarly, bylaws were adopted in 1997, but not officially readopted by the 2001 corporation. No transfer of assets occurred between the two corporations. Clark testified no documentation of shareholder meetings following 2001 existed—at most interoffice correspondence and meetings with the bank, which Clark considered to be corporate meetings but which did not need written documentation.

The Secretary of State administratively dissolved the new Clark Farms three times for failure to submit the biennial report—in 2006, 2012, and 2014. Clark Farms used the statutory procedure to apply for reinstatement each time (in 2006, 2013, and 2016), which was granted. Woodruff uses these dissolutions to allege corporate formalities were not followed. However, the reinstatement statute specifically provides that a reinstatement takes effect as of the date of the dissolution "as if the administrative dissolution had never occurred." Iowa Code § 490.1422(3).

Following the 2001 incorporation, Clark appears to have treated Clark Farms in substantially the same way as his sole proprietorships. The only corporate formalities observed following reincorporation appear to be the filing of the biennial report, which was only done sporadically (but included a listing of the current registered agent and officers and directors), and the filing of taxes. Failure to follow corporate formalities, though one of the recognized factors, "does not necessarily justify piercing the corporate veil." *Tannahill v. Aunspach*, 538 N.W.2d 871, 874–75 (Iowa Ct. App. 1995). While the lack of corporate formalities in this

instance is not sufficient on its own to disregard the corporate entity, it lends weight to other factors supporting Woodruff's request.

### E.     Mere sham

Woodruff claims Clark Farms was a sham corporation but treats the factor as a summary of claims regarding corporate formalities, separate books, and separate finances.  While the other factors may indicate a sham corporation, a corporation can be found to be a sham even if the other factors are not met.  A sham is "a false pretense[;] . . . something that is not what it seems; a counterfeit." *Sham*, Black's Law Dictionary (10th ed. 2014).  A corporation is a sham when it has no business or corporate purpose.  *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 471 (2000) (examining when to pierce the corporate veil on a one-person corporation) (citing *Gregory v. Helvering*, 293 U.S. 465, 469 (1935)).  A sham corporation must be an "instrumentality of, or conduit for" the owner to justify piercing the corporate veil.  *Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 923 (Iowa 1978); *see also In re C.G.C. Stores, Inc.*, No. 87-516-DJ, 1988 WL 1568187 (Bankr. S.D. Iowa, Aug. 30, 1988) (noting businesses were not mere shams, but "created with the intent of conducting legitimate business[ ]").  The district court correctly examined whether Clark Farms was a mere instrumentality of or conduit for Clark.  The evidence clearly shows Clark Farms was a real, if failing, business.  We agree with the district court the corporate entity was not a sham.

Clark Farms successfully conducted business for a number of years, employing workers and completing contracts.  That business began to struggle prior to 2010, and that struggle is not sufficient to pierce the corporate veil.

However, Clark egregiously used the corporate bank account for non-corporate purposes, writing as many checks for his other businesses and for himself as for Clark Farms using the corporate account. The only corporate formalities that appear to have been followed after the 2001 incorporation are the filing of taxes, occasional biennial reports, and the officers named on those filings. Clark's and Halverson's testimony demonstrate the corporate books were not entirely separate from Clark's other finances. Clark's testimony and actions indicate he did not consider the business or its finances to be a separate entity from himself and his other businesses. For these reasons, we determine the corporate veil should be pierced. Therefore, we reverse the district court.

**REVERSED AND REMANDED.**